Filed 7/21/15  P. v. Davison CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN ANTHONY DAVISON,<br><br>    Defendant and Appellant. | B254038<br>(Los Angeles County<br>Super. Ct. No.  MA056059) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Judge.  Affirmed in part, reversed in part and remanded.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Steven Anthony Davison was convicted of a number of charges, including resisting an executive officer and battery. He contends: (1) the trial court committed constitutional error in defining reasonable doubt for the jury; (2) the court erred by failing to properly instruct the jury on lesser included offenses of the charges of resisting an executive officer and battery; (3) the court erred in failing to give a unanimity instruction to support the battery charge, and (4) the court abused its discretion in providing only limited *Pitchess* discovery.[1] He also seeks our review of the trial court's in camera review of documents potentially responsive to his *Pitchess* motion. We conclude that the failure to give a unanimity instruction requires reversal of the battery conviction. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Information*

Appellant was charged by information with one count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a), count one), two counts of resisting an executive officer (Pen. Code, § 69, counts two and three),[2] one count of possession of a smoking device (Health & Saf. Code, § 11364.1, count four), one count of battery upon Lisa Harstad, a person with whom he was in a dating relationship (§ 243, subd. (e)(1), count five), one count of being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a), count six), and one count of criminal threats (§ 422, subd. (a), count seven).[3] It was

---

[1]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]     Undesignated statutory references are to the Penal Code.

[3]     Counts four, five and six were misdemeanors. The remaining counts were felonies.

2

further alleged that appellant had suffered a prior strike. (§ 1170.12, subd. (a) through (d) and § 667, subd. (b) through (i)).

B. *Evidence at Trial*

1. *Harstad's Testimony*

Appellant and Harstad had been in a dating relationship for two years and had been living together in Harstad's apartment for a year and a half. On April 28, 2012, Harstad advised appellant she wanted to break up with him and asked him to move out. He agreed to move out, and asked her to drive him to his nephew's house. At around 11:30 a.m., while they were in Harstad's car, she received a text from a male friend. Appellant, who was in the passenger's seat, put the car in park, took the keys, grabbed Harstad's phone and got out. Harstad followed him. When they got back in the car a few minutes later, appellant was driving. He reached over, slapped Harstad's leg and head, and accused her of planning to meet her male friend. When they arrived at the nephew's house, appellant refused to give Harstad her phone or keys. Harstad said she would use the nephew's phone to call the police. Appellant said if she did, he would strangle her. They went into a back room and appellant forcibly pushed her into a chair.

After approximately 20 minutes at the nephew's house, appellant drove Harstad to a liquor store, where he returned her keys after she bought him a bottle of fortified wine. They returned to Harstad's apartment at approximately 1:00 p.m., and appellant packed some of his belongings. His ex-girlfriend, Lourdes Ramirez, arrived to help him move. When Ramirez threatened to beat Harstad, she started to leave. Appellant persuaded Harstad to stay, but then punched her in the ribs. Appellant said if he wanted to, he could "kill [her] and throw [her] in the desert," "beat [her] beyond recognition," or "give [her] two

3

black eyes." Just before leaving with Ramirez, appellant said he had better leave before he did something he might regret.

Appellant told Harstad he was coming back to get the rest of his things. Fearful he would carry out his threats to hurt her when he returned, Harstad took her laptop and left. She went to the cellular store and then to the Palmdale sheriff's station to report her stolen cell phone and appellant's behavior. Three deputies took her back to her apartment at approximately 6:00 p.m. Appellant was in her apartment when they arrived. Harstad, who was waiting outside away from the entry door, saw appellant being taken away by the deputies, but did not see what happened inside the apartment. She heard the deputies ask "'is anybody here'" and heard appellant say "'Where is Lisa? I need to talk to Lisa.'" She also heard appellant say "'Why are you here,'" and "'You can look under my shirt. I have nothing on me.'" She heard the deputies tell appellant he needed to comply with their wishes and that they were going to put him under arrest, and ask him to stand still. The deputies did not sound angry or impolite. Appellant sounded confused.

A video recorded interview of Harstad was shown to the jury. In it, Harstad described being pushed into a chair and punched in the side, but she did not mention being slapped in the leg and head. Nor did she mention appellant's alleged threat to strangle her if she called the police.

2. *Deputies' Testimony*

The deputies who interviewed Harstad at the sheriff's station did not see any visible injuries. Deputy Scott Sorrow, Deputy Lohnnie Day and Sergeant Paul Zarris escorted Harstad back to her apartment and went inside. They were all wearing uniforms. The deputies announced themselves multiple times. Appellant finally came out of the bedroom and made his presence known.

4

Appellant asked why the deputies were in his apartment. He said they had no right to be there and that he had not done anything. The deputies told him to stand still and put his hands up. He did neither. Instead, he tried to retreat back into the bedroom. Deputy Day asked appellant to put his hands behind his back. He did not comply. Deputy Day grabbed one of appellant's hands in an attempt to cuff him. Appellant repeatedly pulled his hands away. After the deputy got one hand cuffed, appellant continued to resist and attempted to get out of his grasp. The other deputies became involved. In order to cuff appellant, the deputies pushed him down to the ground. Appellant continued to struggle and wriggle his body. The struggle to get handcuffs on appellant lasted one or two minutes.

Appellant appeared to the deputies to be under the influence of some type of narcotic: he was confused and sweating, his muscles were tense and his speech was rapid. When the deputies searched appellant, they found a glass pipe in his front pocket and a wallet. Inside the wallet was a paper bindle containing a crystalline substance that resembled methamphetamine.[4] Appellant refused to provide a urine sample after his arrest.

While the deputies were getting ready to transport appellant, Ramirez arrived. The deputies learned she was on probation and searched her. They recovered two blank checks belonging to Harstad.

### 3. *Ramirez's Testimony*

Ramirez testified she had not observed any of appellant's interactions with Harstad and had not heard him slap her. She denied stopping with him after leaving Harstad's apartment to buy methamphetamine. A video recording of her

---

[4]    A criminalist for the Sheriff's Department tested the substance and confirmed it was methamphetamine.

interview with deputies was played to the jury. In the interview, Ramirez said she heard a slapping noise from the apartment when appellant and Harstad were inside, and heard Harstad say "please don't hurt me." Ramirez told the deputies, she went inside and told appellant to stop. Harstad continued to say "please don't hurt me, please don't hurt me." Ramirez also told deputies that appellant bought "a twenty of crystal" and smoked it at her place in front of her. After the recording was played in court, Ramirez said she had made up what she said about appellant because Deputy Sorrow threatened her and said she would go free if she described what happened in a particular way.[5]

Appellant did not testify and called no witnesses.

C. *Verdict and Sentence*

The jury found appellant guilty of count one (possession of a controlled substance), counts two and three (resisting an executive officer), count four (possession of a smoking device), and count six (being under the influence of a controlled substance). It found appellant guilty of the lesser included offense of simple battery on count five and hung on count seven (making criminal threats). The court sentenced appellant to a term of eight years and two months, consisting of: two years for count one, doubled; eight months for count two, doubled; eight months for count three, doubled; six months for count four; six months for count five, and six months for count six. This appeal followed.

---

[5] To impeach that testimony, the prosecution called Sergeant Zarris, who testified that Ramirez had told him about appellant buying and smoking methamphetamine, when he and Ramirez were talking out of Deputy Sorrow's presence.

**DISCUSSION**

A. *Prosecution's Burden of Proof*

    1. *Background*

During jury selection, the trial court spoke to prospective jurors about the case, the law, the jurors' responsibilities and courtroom procedures. At one point, the court discussed the standard of proof and the meaning of "proof beyond a reasonable doubt." The court first read the last three paragraphs of standard CALCRIM jury instruction No. 220 -- "Proof beyond a reasonable doubt is proof that leaves you with an abiding . . . conviction that the charge is true. [¶] The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must [] impartially compare and consider all the evidence that is to be received throughout this entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty" -- explaining that "abiding" meant "continuing." The court next read prospective jurors part of the standard CALJIC instruction on reasonable doubt, no. 2.90: "Reasonable doubt is not a mere possible doubt because everything relating to human affairs is open to some possible or imaginary doubt. Reasonable doubt is that state of the case which after the entire comparison and consideration of all of the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charges."

The court then read the prospective jurors the following, explaining that it was a "federal court" definition of reasonable doubt: "Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt."

7

The next day, the court stated that it did not "ad lib" the reasonable doubt jury instruction, and reread the last three paragraphs of CALCRIM No. 220 to the prospective jurors. After the evidence portion of the trial, the court instructed the jury on reasonable doubt, again using CALCRIM No. 220: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge or charges is [sic] true. You must not be biased against the Defendant just because he has been arrested, charged with a crime or crimes or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove the defendant guilty beyond a reasonable doubt. Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge or charges are true. [¶] The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." The jurors were provided copies of the court's instructions during deliberations.

2. *Analysis*

Appellant contends the trial court's pre-trial discussions with the venire about the standard of proof and the meaning of reasonable doubt violated his constitutional rights by lowering the prosecution's burden of proof. Specifically, he contends that reading the portion of the federal definition defining proof beyond

8

a reasonable doubt as "proof that leaves you firmly convinced that the defendant is guilty" constituted reversible error.[6]

Due process requires that the jury be instructed on the necessity that the defendant's guilt be proved beyond a reasonable doubt. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5.) The Constitution does not require any particular words be used. (*Ibid.*; *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30.) But our Supreme Court has cautioned against "'an impromptu instruction on reasonable doubt'" and warned that "varying from the standard is a 'perilous exercise.'" (*People v. Freeman* (1994) 8 Cal.4th 450, 503-504.) In evaluating a challenge to the wording of a jury instruction on reasonable doubt, the issue presented is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [correct] standard." (*Victor v. Nebraska*, *supra*, 511 U.S., at p. 6.)

Here, the trial court did not modify the reasonable doubt instruction, but instructed the jury prior to deliberations with CALCRIM No. 220 as written and without embellishment. That instruction was read to the jury again following the close of evidence and was also provided in writing for the jurors' use in their deliberations. The language appellant challenges was found in the court's comments to the venire, and was neither read to the jury nor given in writing. We find no basis to believe the jury was confused as to the appropriate standard of proof.

Nor do we find the "firmly convinced" language to which appellant objects measurably different from the language of CALCRIM No. 220 or otherwise

---

[6]    Failure to object at trial does not preclude appellate review of challenges to the trial court's reasonable doubt instructions. (*People v. Johnson* (2004) 119 Cal.App.4th 976, 984.)

9

constitutionally deficient.  The language was contained in the 1989 manual of pattern criminal jury instruction for the district courts of the Ninth Circuit (see *U.S. v. Velasquez* (9th Cir. 1992) 980 F.2d 1275, 1278-1279), and has repeatedly been found to be appropriate by the Ninth Circuit and other federal courts.  (See, e.g., *ibid.*; *U.S. v. Bustillo* (9th Cir. 1986) 789 F.2d 1364, 1368; *U.S. v. Hunt* (5th Cir. 1986) 794 F.2d 1095, 1100-1101; *U.S. v. Taylor* (D.C. Cir. 1993) 997 F.2d 1551, 1556-1557.)  Appellant cites no authority for the proposition that reading the challenged language to the jury results in a violation of the defendant's constitutional rights.  We see no cognizable difference between instructing the jurors they must have an "abiding . . . conviction that the charge . . . is true," as stated in CALCRIM No. 220, and instructing the jurors they must be "firmly convinced that the defendant is guilty."  In short, we find no prejudicial error in the court's actions in this case.

B.  *Failure to Instruct Sua Sponte on Section 148, Subdivision (a)(1)*

1. *Background*

Count two alleged that appellant violated section 69 (resisting an executive officer) by "unlawfuly attempt[ing] by means of threats and violence to deter and prevent [Deputy Lohnnie Day] from performing a duty imposed upon such officer by law, and . . . knowingly resist[ing] by the use of force and violence said executive officer in the performance of his/her duty."  Count three alleged that appellant violated section 69 by "unlawfuly attempt[ing] by means of threats and violence to deter and prevent [Deputy Scott Sorrow] from performing a duty imposed upon such officer by law, and . . . knowingly resist[ing] by the use of force and violence said executive officer in the performance of his/her duty."

After the evidence portion of the trial, the court instructed the jurors on the charge of resisting an executive officer in violation of section 69 only with respect

10

to resistance by use of force and violence: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant unlawfully used force or violence to resist an executive officer. [¶] 2. When the defendant acted, the officer was performing his lawful duty. And, [¶] 3. When the defendant acted, he knew the executive officer was performing his duty." The court did not instruct the jury on resisting arrest under section 148, subdivision (a)(1).

### 2. *Analysis*

Section 69, the basis of counts two and three, prohibits "attempt[ing], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law" and "knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty . . . ." Section 148, subdivision (a)(1), prohibits "willfully resist[ing], delay[ing], or obstruct[ing] any public officer, peace officer, or an emergency medical technician [as statutorily defined], in the discharge or attempt to discharge any duty of his or her office or employment . . . ." Appellant contends that section 148, subdivision (a)(1) is a lesser included offense of section 69, and that failure to instruct the jury sua sponte on section 148, subdivision (a)(1) was error. We disagree.

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]'" (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*), quoting *People v. St. Martin* (1970) 1 Cal.3d 524, 531.) "'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to

11

whether all of the elements of the charged offense were present [citation]." (*Smith*, *supra*, 57 Cal.4th at p. 239, quoting *People v. Breverman* (1998) 19 Cal.4th 142, 154.) "'[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.'" (*Smith*, *supra*, at p. 239, quoting *People v. Birks* (1998) 19 Cal.4th 108, 112.) "Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.'" (*Smith*, *supra*, at p. 240, quoting *People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) The trial court is not, however, "'obliged to instruct on theories that have no such evidentiary support.'" (*Smith*, *supra*, at p. 240.)

In *Smith*, the Supreme Court explained that there are two types of section 69 violations: "The first way of violating section 69, 'encompasses attempts to deter either an officer's immediate performance of a duty imposed by law or the officer's performance of such a duty at some time in the future.' [Citation.]'" (*Smith, supra,* 57 Cal.4th at p. 240, quoting *In re Manual G.* (1997) 16 Cal.4th 805, 814, italics deleted.) "The actual use of force or violence is not required," it can be violated by a "'threat,'" and the officer need not be engaged in the performance of his or her duties at the time any threat is made. (*Smith, supra,* at p. 240; § 69.) A defendant "can violate section 69 in the first way . . . without violating section 148 (a)(1)." (*Smith*, *supra*, at p. 243.)

The second way to violate section 69 "expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense." (*Smith*, *supra*, 57 Cal.App.4th at p. 241.) "A person who violates section 69 in the second way . . . also necessarily violates section 148(a)(1) by 'willfully resist[ing] . . . any public officer . . . in the discharge or attempt to discharge any duty of his or her

12

office or employment.'"  But because "it is possible to violate section 69 in the first way -- by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty -- without also violating section 148(a)(1)[,] . . . section 148(a)(1) is not a lesser included offense of section 69 . . . ."  (*Smith*, *supra*, at p. 241.)[7]

The court nonetheless concluded that a duty to instruct on section 148, subdivision (a)(1) could arise where, as here and as in *Smith*, the prosecution alleged that the defendant violated section 69 in both ways:  "[S]o long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense, without also committing the greater, the trial court must instruct on the lesser included offense."  (*Smith*, *supra*, 57 Cal.4th at p. 244.)  In sum, "[w]here an accusatory pleading alleges both ways of violating section 69, the trial court should instruct the jury that if it finds beyond a reasonable doubt that a defendant committed either way of violating section 69, it should find the defendant guilty of that crime.  If not, the jury may return a verdict on the lesser offense of section 148 (a)(1) so long as there is substantial evidence to

---

[7]     Respondent contends there is a split of authority on this issue, citing *People v. Lacefield* (2007) 157 Cal.App.4th 249 and *People v. Lopez* (2005) 129 Cal.App.4th 1508. That was true prior to the Supreme Court's decision in *Smith*, which "disapprove[d] *People v. Lacefield* . . . to the extent it held that section 148(a)(1) is a necessarily lesser included offense of section 69 based upon the statutory elements of those offenses." (*Smith, supra,* 57 Cal.4th at p. 242.)  In disapproving *People v. Lacefield*, however, the Supreme Court went on to explain that in many circumstances in which a violation of section 69 is charged, an instruction on section 148, subdivision (a)(1) will be necessary, as is discussed further.

13

conclude that the defendant violated section 148(a)(1) without also violating section 69." (*Id*. at pp. 244-245.)[8]

The Supreme Court then turned to the question whether in *Smith* there was evidence to support that the offense was less than the one charged, the final step in determining whether failure to give instruction on section 148, subdivision (a)(1) constituted error. It concluded there was not: in one incident the defendant, a prisoner, "physically resisted and punched [a] guard"; in the other, the defendant "again physically resisted the guards . . . ." (*Smith, supra,* 57 Cal.4th at p. 245.) As "[t]here was no evidence that defendant committed only the lesser offense of resisting the officers without the use of force or violence in violation of section 148(a)(1)," "[d]efendant was either guilty or not guilty of resisting the executive officers by the use of force or violence in violation of section 69," and the trial court was not required to instruct the jury on section 148, subdivision (a)(1). (*Smith, supra,* at p. 245.)

Here, we similarly conclude that the trial court was not required to instruct the jury on the lesser offense of section 148, subdivision (a)(1) because the evidence against appellant to support the section 69 charges was based entirely on his physical resistance. The evidence established that appellant physically resisted the deputies by pulling his hands away when they attempted to handcuff him. When the deputies tried to handcuff appellant's hands behind him, he pulled his arms in front of his body. When the deputies were forced to take him to the ground, appellant continued to physically struggle with them. Accordingly, there

---

[8]    It necessarily follows from the Supreme Court's holding in *Smith* that a duty to instruct on section 148 subdivision (a)(1) as a lesser included offense could also arise where only the second type of section 69 violation is alleged and proved. As noted, here the case went to the jury based on appellant's alleged violation of section 69 in the second manner -- by use of force or violence at a time when the officers were attempting to discharge their duties.

14

was no evidence that appellant committed the lesser offense of resisting the officers without the use of force or violence.

We find further support for our decision in *People v. Carrasco* (2008) 163 Cal.App.4th 978, where the court found that "if [the defendant] resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69." The witnesses testified the defendant "had to be physically taken to the ground by [a detective] because he refused to comply with . . . repeated orders to remove his hand from his duffle bag." (*Id*. at p. 985.) In addition, the defendant "failed to comply with several officers' repeated orders to relax" and "to 'stop resisting,'" and "continued to struggle" with several officers. (*Id*. at pp. 985-986.) The defendant "continued to squirm" and refuse to surrender his right hand until he was pepper sprayed. (*Id*. at p. 986.) The court concluded "the jury would have had no rational basis to conclude [the defendant] wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence . . . ." (*Ibid*.; see also *People v. Bernal* (2013) 222 Cal.App.4th 512, 519 [violation of section 69 "need not involve any force or violence directed toward the person of an executive officer"; "[the] force used by a defendant in resisting an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction." (Italics deleted.)].) In line with these authorities, we reject appellant's contention that giving the lesser included offense instruction was required.


C. *Failure to Give Unanimity Instruction Sua Sponte*

1. *Background*

The jury was instructed on battery in violation of section 243, subdivision (e)(1), as follows: "To prove that the defendant is guilty of this crime, the People

15

must prove that: [¶] 1. The defendant willfully and unlawfully touched Lisa Harstad in a harmful or offensive manner. And, [¶] 2. Lisa Harstad is the defendant's former cohabitant or person with whom the defendant currently has or previously had a dating relationship." The jury was further instructed that "the slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing is enough. The touching does not have to cause pain or injury of any kind. The touching can be done indirectly by causing an object or someone else to touch the other person." The court also instructed the jurors that they could "find [the defendant] guilty of a lesser crime" if "convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime." The court explained that "[s]imple battery is a lesser crime of battery against a spouse or cohabitant" and that "[s]imple assault is a lesser crime of battery against a spouse or cohabitant . . . ." The court did not give a unanimity instruction. As discussed, the jury found appellant guilty of the lesser included offense of simple battery.

2. *Analysis*

In closing argument, the prosecutor stated that the misdemeanor battery charge had been proven through evidence of multiple instances in which appellant hit Harstad: "[T]he first [element] is that [appellant] willfully and unlawfully touched [Harstad] in a harmful and offensive manner. And that touching can be one of a multitude of things that happened during April 28. It could be the slap on the face . . . as her head hit the window when it happened in the car. It could be . . . the punch as he punched her while she was sitting on the couch in her apartment being hit in the rib area. It could be any one of those instances." Appellant contends the court prejudicially erred by failing to give a unanimity instruction. For the reasons set forth below, we agree.

16

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132, italics deleted; accord, *People v. Thompson* (1995) 36 Cal.App.4th 843, 850.) "The unanimity requirement is constitutionally rooted in the principle that a criminal defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged." (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1499-1500.) "'[W]hen the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (*People v. Thompson*, *supra*, at p. 850, quoting *People v. Gordon* (1985) 165 Cal.App.3d 839, 853.) The prosecutor may make the selection in the opening statement to the jury or the closing argument. (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418-419; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455.) "The duty to instruct on unanimity when no election has been made rests upon the court sua sponte." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)

Here, the evidence could have supported two or possibly three distinct instances of battery that occurred at different times and places over the course of the day. The first incident occurred when appellant allegedly hit Harstad on her leg and head when they were in the car. The second occurred after the trip to the liquor store and the return to Harstad's apartment, when appellant punched her in the ribs. The slap that Ramirez allegedly heard from outside the apartment may have been seen as corroborating the second incident or as a separate incident.

17

Respondent acknowledges that the prosecutor did not make an election at any point in the proceeding. To the contrary, the prosecutor argued in closing that the jury was free to select among "one of a multitude of things that happened during April 28."[9] Respondent contends, however, that the error in failing to give a unanimity instruction was harmless.

Pointing to a split of authority over the standard to be applied in evaluating the failure to give a unanimity instruction, respondent contends that we should apply the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, and reverse only if we find it reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. Alternatively, respondent asserts that even under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24, requiring reversal unless the error was harmless beyond a reasonable doubt, the conviction should be affirmed. We conclude that under neither standard was the error harmless. The testimony of the witnesses was inconsistent. Although Harstad testified that appellant slapped her head and leg while they were in the car, she did not mention this incident in her interview with the deputies. Ramirez told the deputies she heard the sound of a slap when appellant and Harstad were alone in the apartment, but at trial denied doing so. While Harstad was consistent about having been punched in the ribs, the jury not compelled to credit her testimony, and in light of the jury's failure to convict on the criminal threats counts, we

---

[9]     Respondent does not argue that the multiple acts over the course of the day represented a continuous course of conduct. (See *People v. Thompson* (1984) 160 Cal.App.3d 220, 224 [continuous course of conduct exception to requirement that unanimity instruction be given "arises in two contexts": "The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time."].)

cannot say with certainty that it did. On this record, we cannot find the error harmless. Accordingly, the battery conviction must be reversed.[10]

### D. *Partial Denial of Pitchess Motion*

#### 1. *Background*

Prior to trial, appellant moved the court pursuant to *Pitchess*, *supra*, 11 Cal.3d 531, for discovery of any complaints of dishonestly, false reporting, false arrest, excessive force or other improper tactics described or contained in the personnel files of Deputy Sorrow and Deputy Day. His attorney's declaration stated: "[Appellant] says that Deputy Sorrow told Lourdes Ramirez, falsely, that he would let her out of jail if she said, falsely, that she saw [appellant] smoking speed and if she said, falsely, that she heard [appellant] hit Lisa Harstad . . . ." The declaration further stated that after appellant told Deputy Day that he had back problems, including disk separation, Deputy Day put his knee in appellant's back. Appellant also attached some of the deputies' reports. Deputy Day's report discussed questioning Ramirez about the violence between appellant and Harstad and appellant's drug use. It noted that the entire interview was video recorded. Appellant argued that "[t]he credibility of [Deputy Sorrow and Deputy Day] and Sgt. Zarris is the entirety of the case against [appellant] as far as the two felony counts of Resisting [an] Executive Officer. [¶] A history of dishonesty and using improper tactics would be relevant to impeach the officers and establish that the officers acted in this case in conformity with a habit and custom to act outside the law."

---

[10] Appellant also contends the battery conviction must be reversed because the court failed, sua sponte, to provide a definition of assault when instructing the jurors on the lesser included offense of simple assault. Because we reverse on another ground, we need not reach this contention.

At the hearing, the court asked the basis for the motion, specifically, whether appellant was alleging improper contact, improper tactics, or excessive force with reference to the charge of resisting an executive officer. Counsel responded that Deputy Day had allegedly put his knee in appellant's back after hearing that appellant had back problems. The court agreed to conduct an in camera review of Deputy Day's files with respect to any claims of excessive force only. With respect to Deputy Sorrow, the court inquired whether there was a declaration from Ramirez. When counsel responded in the negative, the court found there was "no sufficient cause" to conduct an in camera inspection of Deputy Sorrow's personnel files.

### 2. *Analysis*

Appellant contends the court erred in limiting *Pitchess* discovery to claims of excessive force against Deputy Day, and should instead have conducted in camera review of the personnel files of both Deputy Day and Deputy Sorrow and provided discovery in all the requested areas. We find no error in the court's ruling.

Although police officer personnel records are generally confidential (§§ 832.7-832.8), a criminal defendant is entitled to the discovery of the contents of such records if the information contained therein is relevant to his ability to obtain a fair trial or to defend against pending charges. (*Pitchess*, *supra*, 11 Cal.3d at pp. 536-538.) The process by which a criminal defendant may discover personnel records is codified in Evidence Code sections 1043 to 1045. Initially, the defendant must submit a motion accompanied by an affidavit or declaration "showing good cause for the discovery or disclosure sought" and "setting forth the materiality thereof to the subject matter involved in the pending litigation." (Evid. Code, § 1043, subd. (b)(3).) In other words, "a showing of good cause requires a

defendant seeking *Pitchess* discovery to establish . . . a logical link between the defense proposed and the pending charge, [and] to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 (*Warrick*).)

"If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance." (*Warrick*, *supra*, 35 Cal.4th at p. 1019.) Appellate courts review a trial court's decision on the discoverability of material in police personnel files under an abuse of discretion standard. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

Although the threshold for establishing entitlement to *Pitchess* discovery is low, it is a burden the defendant must meet. The declaration in support of the Pitchess motion "must propose a defense or defenses to the pending charges," "articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses," and "describe a factual scenario supporting the claimed officer misconduct." (*Warrick*, *supra*, 35 Cal.4th at p. 1024.) The trial court hearing a *Pitchess* motion may consider, along with the supporting declaration, police reports, witness statements and other pertinent documents. (*Id.* at p. 1025.) Where the supporting declaration fails to establish a plausible factual foundation for the alleged officer misconduct when read in light of the other pertinent documents, the motion should be denied. (*Ibid.*; *People v. Hill* (2005) 131 Cal.App.4th 1089, 1099, disapproved in part on another ground in *People v. French* (2008) 43 Cal.4th 36.)

Here, the supporting declaration stated that Deputy Day used excessive force against appellant after appellant told the deputy of his back problems, potentially

21

providing a defense to the charges of resisting an executive officer. Appellant presented no factual basis in his moving papers for discovery of any other information about Deputy Day. Accordingly, the trial court did not abuse its discretion in limiting the discoverable information pertinent to Deputy Day.

With respect to Deputy Sorrow, appellant's counsel's declaration merely asserted that appellant claimed Deputy Sorrow had tricked Ramirez into giving a statement against him. There was no indication appellant or his counsel had personal knowledge of Deputy Sorrow's discussions with Ramirez. The attached reports indicated that Ramirez's entire interview in which she made statements implicating appellant was video recorded. On the record before it, the trial court could reasonably conclude there was insufficient factual support for the contention that Deputy Sorrow tricked or coerced Ramirez into making false statements implicating him. On this record, we conclude the court did not abuse its discretion in finding the contentions regarding Deputy Sorrow unsupported.

E. *Pitchess Review*

As discussed, the court conducted an in camera review of Deputy Day's personnel file. It found no discoverable items. Appellant requests that we independently review the trial court's conclusion. We have reviewed the sealed transcript of the in camera hearing (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229), and conclude there is no basis to disturb the court's ruling on the *Pitchess* motion.

22

## DISPOSITION

The conviction under count five for battery is reversed.  In all other respects the judgment is affirmed.  The matter is remanded for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.