[No. D062831. Fourth Dist., Div. One. Dec. 20, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
FERNANDO BERNAL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion.

**COUNSEL**

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez and Lynn G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.—Penal Code[1] section 69 makes it a crime to knowingly resist, with force or violence, an executive officer in the performance of his or her duties. In his principal argument on appeal, the defendant in this case, Fernando Bernal, argues that section 69 requires proof that the defendant used force *against* or *on* the executive officer. We reject this narrow interpretation of section 69.

Section 69 plainly covers a situation, such as the one disclosed in this record, where an officer's attempt to lawfully restrain defendant was hampered by defendant's quite forceful attempt to escape that restraint, including dragging the officer several feet down a bike path. Although, there is no evidence Bernal attempted to harm or otherwise touch the officer, there is ample proof that he used considerable force in attempting to escape from the restraint the officer was lawfully using on him; that force fully supports Bernal's conviction of violating section 69.

Bernal also contends the trial court was required to give a sua sponte instruction on the meaning of "force or violence" as used in section 69. Because these terms have no technical meaning peculiar to the law, no sua sponte instruction was required.

We also reject Bernal's contention the prosecutor was guilty of any prejudicial misconduct.

Accordingly, we affirm the judgment of conviction.

## FACTUAL SUMMARY

Three separate incidents, which occurred during the fall of 2011, gave rise to the complaint filed against Bernal:

A. *September 21, 2011*

In the early morning hours of September 21, 2011, Bernal, a confederate identified as Ulice Rivera, and an unidentified female confederate robbed Phillip Broadway as he was attempting to leave a friend's home in Escondido. The robbery took place after a car one of the thieves was driving struck

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Broadway's car as he was trying to leave a party; when Broadway got out of his car, Bernal and Rivera began hitting Broadway while the female confederate climbed into Rivera's car and began searching it for items of value. After the assailants left, Broadway looked around his car and determined that the robbers had taken a ring, chef's knives, a sharpening tool, insurance paperwork and some business cards.

### B. *October 13, 2011*

At 11:30 p.m. on October 13, 2011, two City of Escondido police officers, Russell Whitaker and Michael Duong, were on bicycles patrolling a bike path that runs along a flood control channel in Escondido. The flood control channel and bike path are in an area claimed by an Escondido street gang, the Diablos, and the area is also subject to a gang injunction.

Because the bike path is closed after dusk and is subject to a gang injunction, when the officers saw Bernal, Manuel Lopez and a juvenile on the path, they approached the trio. Bernal and Lopez are members of the Diablos's rival, the Westside gang. As they were approaching the men, Lopez took a steak knife out of one of his pockets and dropped it on the ground. In response, Officer Duong secured the knife and placed Lopez in handcuffs.

Officer Whitaker performed a patdown search of Bernal and discovered an axe in Bernal's front waistband. Officer Whitaker removed the axe and placed it in a secure area. Officer Whitaker then attempted to handcuff Bernal.

Officer Whitaker stood in back of Bernal and was using his left hand to hold on to Bernal's left hand while he used his right hand to retrieve his handcuffs from his belt. As Officer Whitaker was attempting to put the handcuffs on Bernal, Officer Whitaker felt Bernal's hands push against him as Bernal attempted to get onto the balls of his feet and begin running. Officer Whitaker dropped the handcuffs and grabbed Bernal around Bernal's waist with both of his hands. Bernal then began running west on the bike path, dragging Officer Whitaker with him. Bernal jerked his hips a couple of times—first to the right and then to the left—in an apparent effort to throw off Officer Whitaker. Bernal was able to drag Officer Whitaker approximately eight to 10 yards down the bike path before both men fell to the ground.

According to Officer Whitaker, from the time he was holding Bernal's left hand and was trying to handcuff Bernal, until the two men fell together on

the bike path, he never lost physical contact with Bernal. Officer Whitaker, who was wearing shorts, suffered bruised and scraped knees.

After Officer Whitaker and Bernal fell to the ground, Officer Duong ran over and assisted Officer Whitaker in handcuffing Bernal.

After all three suspects were securely restrained, a further search uncovered that each of the suspects had one or more large rocks in his pocket, and the juvenile had a can of spray paint with no cap.

### C. *November 30, 2011*

On November 30, 2011, an Escondido resident reported that his home had been burglarized that day and that a television, a video camera, jewelry, clothing and a safe containing paperwork which belonged to family members were missing.

A short time later, Bernal was seen walking down a street in Escondido carrying a bag. Bernal placed the bag on the passenger seat of a car; the bag was retrieved later, and papers from the burglary were discovered inside.

At the time the stolen paperwork was retrieved, Bernal was placed under arrest and, during a patdown search, two baggies with usable amounts of methamphetamine were found on Bernal's person.

### PROCEDURAL BACKGROUND

Bernal was charged in an information with resisting an executive officer with force or violence (Pen. Code, § 69), street terrorism (Pen. Code, § 186.22, subd. (a)), receiving stolen property (Pen. Code, § 496, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and robbery (Pen. Code, § 211). The information further alleged that Bernal had one prior strike within the meaning of Penal Code sections 667, subdivisions (b)–(i) and 1170, subdivisions (a)–(d) and had served a prior prison term (Pen. Code, § 667.5, subd. (b)). The information also alleged that Bernal had received stolen property and possessed methamphetamine while on bail or his own recognizance. (Pen. Code, § 12022.1, subd. (b).)

A jury found Bernal guilty of all five substantive charges. In a bifurcated proceeding, Bernal admitted the prior strike, prior prison term and on-bail allegations. The trial court sentenced Bernal to a term of 11 years eight months.

## DISCUSSION

## I

As his first issue on appeal, Bernal raises the contention that his conviction of violating section 69 must be reversed because the People did not present evidence he used force or violence in his attempt to escape arrest. In particular, he argues there was no showing that he used force *against* or *on* Officer Whitaker. We reject Bernal's narrow interpretation of the statute and find ample evidence of the use of force or violence within the meaning of the statute.[2]

Section 69 states: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

As the court in *In re Manuel G.* (1997) 16 Cal.4th 805, 814 [66 Cal.Rptr.2d 701, 941 P.2d 880] stated: "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; *the second is resisting by force or violence an officer in the performance of his or her duty*. [Citation.]" (Italics added.) Here, Bernal was charged with and tried on the theory he was guilty of the second type of offense defined by section 69.

---

[2] In reviewing an appellant's contention that a judgment of conviction is not supported by sufficient evidence, we are guided by a familiar standard: " 'In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]' " (*People v. Story* (2009) 45 Cal.4th 1282, 1296 [91 Cal.Rptr.3d 709, 204 P.3d 306].)

It bears emphasis that under the express terms of the statute, the second type of violation occurs when a defendant "knowingly *resists*, by the use of force or violence, such officer . . . ." Other than forceful resistance, the terms of the statute do not require that a defendant use any other manner of force or violence on the person of the executive officer. We also note the CALCRIM instruction on section 69 instructs juries that they must find that the defendant used "force[ or violence] *to resist* an executive officer." (CALCRIM No. 2652, italics added.) Like the statute, the instruction does not require more than forceful resistance.

The force required for commission of the second type of violation of section 69 is illustrated in the holding in *People v. Carrasco* (2008) 163 Cal.App.4th 978, 982 [77 Cal.Rptr.3d 912] (*Carrasco*). In *Carrasco*, the defendant appeared at a police station and behaved in a bizarre and threatening manner. The defendant was on a bicycle and had his hand in a duffel bag; this behavior caused one officer, Deputy Raul Macias, to fear for his safety and draw his service revolver. Another police officer, Detective Jim McGuffin, "came from the back of the station and grabbed appellant's waist. Appellant pulled his right hand from the duffle bag and tried to ride away on his bike, but McGuffin forced him to the ground. As Deputy Macias held on to appellant's torso, three other detectives attempted to control his arms. Ten to 15 other officers were present at the scene. Officers told appellant to relax and put his hands behind his back, but he refused. Continuing to struggle, he placed his hands underneath his body while 'yelling, kicking, [and] cussing' and saying he would 'kick [their] ass[es].' Deputy Macias said, 'Stop resisting,' but appellant continued to squirm and refused to give his right hand. Lieutenant Michael Rothans held appellant's shoulders and three or four times told him to relax and place his hands behind his back. Rothans then pepper sprayed appellant." (*Carrasco, supra*, 163 Cal.App.4th at p. 982.)

On appeal, Carrasco argued the trial court should have given an instruction on the lesser included offense of resisting a peace officer in the discharge or attempt to discharge any duty within the meaning of section 148, subdivision (a)(1). The court in *Carrasco* agreed that because resisting arrest with force or violence necessarily includes the lesser crime of simply resisting arrest, as set forth in section 148, section 148 is a lesser included offense of the second type of section 69 violation. (*Carrasco, supra*, 163 Cal.App.4th at p. 985.) However, the court found that no lesser included offense instruction was required because: "[I]f appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69. The People's witnesses testified appellant was knowingly and unlawfully resisting both

Deputy Macias and Detective McGuffin through the use of force or violence. Appellant had to be physically taken to the ground by Detective McGuffin because he refused to comply with Deputy Macias's repeated orders to remove his hand from his duffle bag. Appellant failed to comply with several officers' repeated orders to relax and Macias's orders to 'stop resisting.' He continued to struggle with Macias and McGuffin, as well as several other officers. Macias attempted to control appellant's torso, while three other detectives attempted to control appellant's arms. Appellant placed his hands and arms underneath his body, was 'yelling, kicking, [and] cussing,' and said he would 'kick [the officers'] ass[es].' Appellant continued to squirm and refused to give his right hand to Macias. Appellant did not comply until after Lieutenant Rothans administered the use of pepper spray. There was no contrary evidence disputing the officer's description of the struggle on the floor. Hence, the jury would have had no rational basis to conclude appellant wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence; accordingly, the trial court properly instructed the jury by not instructing it with section 148, subdivision (a) as a lesser included offense." (*Carrasco, supra,* 163 Cal.App.4th at pp. 985–986.)

▮ The facts considered by the court in *Carrasco,* as well as the court's conclusion those facts required the jury to find that force or violence was used, demonstrate that a violation of section 69 need not involve any force or violence directed toward the person of an executive officer. Rather, as the facts set forth by the court in *Carrasco* illustrate, force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction. In this regard, given the court's detailed description of the defendant's conduct—which did not involve any force directed at any of the arresting officers—the court's reference to "force or violence" against an officer (*Carrasco, supra,* 163 Cal.App.4th at p. 985) plainly includes force or violence used in *resisting* arrest.

We also note that in addition to the holding in *Carrasco,* at least one other court has assumed that section 69 does not require that any force or violence be directed toward an officer. In *People v. Martin* (2005) 133 Cal.App.4th 776, 782–783 [35 Cal.Rptr.3d 105] (*Martin*), the defendant was convicted of battery on one police officer in violation of section 243, subdivision (c)(2) and resisting arrest by four other officers in violation of section 69. The trial court sentenced the defendant separately for both crimes. On appeal, the defendant argued that because section 69 was not, by its terms, a crime against police officers, it was not a violent crime that could be separately punished under the multiple-victim exception to section 654. In rejecting this argument, the court accepted the proposition that section 69 is not an offense directed " 'against the person.' " (*Martin, supra,* 133 Cal.App.4th at p. 782.) The court found that, while the statute was designed to protect peace officers

from more than just battery, it was nonetheless a violent crime for purposes of applying the multiple-victim exception. "The statutory language specifically provides that the offense is one involving resisting an officer by 'force or violence.' It is designed to protect police officers against violent interference with performance of their duties. [Citation.] While the object of the offense may not be to attack a peace officer, its consequence is frequently to inflict violence on peace officers, or subject them to the risk of violence. . . . [¶] . . . [¶] Whether the purpose of violence is to inflict harm on the officers or the harm is merely incidental to the goal of facilitating the perpetrator's escape, the consequence is the same; peace officers are subjected to violence and injury. As a result, the multiple-victim exception is applicable here, because appellant committed acts of violence against more than one victim; he resisted arrest by four different officers and battered one of them." (*Martin, supra,* 133 Cal.App.4th at pp. 782–783.)

By interpreting section 69 in terms of *the risk of violence* created by any forceful resistance to arrest, rather than in terms of any intent to commit harm, the court in *Martin* implicitly eliminated any requirement that a defendant intend to harm a police officer or direct force or violence toward an officer.

■ In sum, given the express terms of the statute and the holdings in *Carrasco* and *Martin,* we conclude that forceful resistance of an officer by itself gives rise to a violation of section 69, without proof force was directed toward or used on any officer.

Under this interpretation of the statute, Bernal's forceful attempt to escape from Officer Whitaker plainly violated section 69. The record demonstrates that while Whitaker was holding Bernal's left hand, Bernal pushed against Whitaker and tried to begin running and that while Whitaker was holding on to Bernal's waist, Bernal dragged Whitaker eight to 10 yards down the bike trail, until they both fell violently to the ground. In addition, the record shows that, by swinging his hips first to one side and then to the other, Bernal attempted to free himself from Whitaker's grasp. Contrary to Bernal's contention on appeal, this forceful and violent conduct amply supported his conviction of violating section 69.

II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 512.

## DISPOSITION

The judgment of conviction is affirmed.

Aaron, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 26, 2014, S215913.