Filed 2/4/21  P. v. Bruestle CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076937 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN389602) |
| MARK BRUESTLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William Wood, Judge.  Affirmed.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Mark Bruestle of resisting an executive officer by force and violence (Pen. Code,[1] § 69; count 1) and vandalism causing damage in excess of $400 (§ 594, subd. (a)(b)(1); count 2). The jury found true an allegation that Bruestle personally inflicted great bodily injury on a police officer (§§ 12022.7, subd. (a) and 1192.7, subd. (c)(8)) in connection with count 1.

The court sentenced Bruestle to a term of five years eight months in custody.

Bruestle appeals challenging only the conviction for count 1. He contends the court prejudicially erred in declining to instruct the jury on resisting arrest without force or violence pursuant to section 148. The parties agree that under the accusatory pleadings test, section 148 would be a lesser included offense of section 69 in this case. We will conclude there is no substantial evidence in this record to justify an instruction on the lesser offense. In any event, we will agree with the People that any error would be harmless on this record. Accordingly, we will affirm the judgment.[2]

STATEMENT OF FACTS

The summary of facts set forth in the respondent's brief is accurate and objective. We will include it here.

On August 7, 2018, around 1:50 a.m., Bruestle was standing in the middle of the street in downtown Oceanside screaming at the top of his lungs. People who lived in the neighborhood looked out their windows and saw Bruestle kicking and pounding on a silver Dodge SUV owned by Scott C., who

---

[1]     All further statutory references are to the Penal Code.

[2]     Bruestle does not challenge his conviction in count 2 for vandalism, nor does he challenge the sufficiency of the evidence to support the true finding on the enhancement under section 12022.7, subdivision (a).

had parked it on the street the previous evening. Bruestle tore the windshield wiper off the back window, and tried to pry the license plate off. The SUV had dents and the gas cap and rear taillight were broken.[3] Bruestle was also seen pounding on the windows of a nearby Jersey Mike's restaurant.

At some point, a pedestrian came walking down the street. Bruestle chased the individual a short distance. Bruestle moved into the middle of the street and harassed drivers as they drove by. A car then stopped at the intersection. Bruestle got in front of the car and hit the driver's side windows before the car drove off.

Around 2:00 a.m., Oceanside Police Officers Kelly Thompson and Aaron Weirich arrived on the scene after receiving two calls that a male wearing dark shorts and no shoes was causing a disturbance and hitting and kicking a parked vehicle. Their bodycam videos of their encounter with Bruestle were played for the jury. Officer Thompson approached Bruestle, who matched the description provided, while Officer Weirich exited his vehicle and came around the sidewalk on Bruestle's other side.

Officer Thompson asked Bruestle what was going on, and Bruestle did not respond. Officer Thompson calmly told Bruestle to have a seat and stop moving for officer safety reasons; Bruestle did not comply. Bruestle had his right hand "kind of behind his back," which made Officer Thompson believe he might be holding or concealing a weapon.

Bruestle told Officer Thompson, "They are harassing me." Officer Thompson asked who was harassing him, but Bruestle did not respond. Officer Thompson then told Bruestle that they had received a call about him.

---

3    Scott C. testified that it cost him $5,500 to repair the damage Bruestle did to his Dodge SUV.

Bruestle got agitated and asked, "Who called?" Officer Thompson told Bruestle that he did not know who called. When Officer Thompson asked for Bruestle's name, he responded, "Sir Knight" and then "Mark Joseph Don Bruestle," as he approached Officer Thompson. Officer Thompson repeatedly told Bruestle to relax.

Bruestle continued to refuse to sit down, ignored Officer Thompson's commands, and at one point, started to advance towards Officer Thompson. Bruestle raised his right hand towards the side of his head, making Officer Thompson fear Bruestle might try to strike or attack him. Officer Thompson, who was holding his taser in the "low ready position" can be seen in the bodycam video backing up to create more space between himself and Bruestle. Officer Thompson told Bruestle to stop moving and get back.

While Bruestle was still facing Officer Thompson, Officer Weirich took hold of Bruestle's left arm and the back of his neck and calmly walked him towards the hood of Officer Thompson's patrol vehicle so that the officers could place Bruestle in handcuffs. At that point, Bruestle took hold of the push bumper on the front of the vehicle and gripped it with both hands.

The officers then attempted to bend Bruestle at the waist and place his upper body against the hood of the car. While gripping the push bumper, Bruestle resisted Officer Thompson's and Weirich's efforts to place Bruestle's hands behind his back to secure handcuffs. The officers told Bruestle to let go of the bumper and stop resisting, but he continued to resist.

Bruestle was fully tensing up his back and arm muscles and making himself as stiff as possible to not allow the officers to put his hands behind his back. With the force of both Officer Weirich and Officer Thompson pulling Bruestle's forearms and wrists, Officer Thompson got a handcuff on his right wrist, and Officer Weirich was able to pull his left arm from the

4

push bumper to secure the left handcuff. At some point during this struggle, Officer Weirich's finger got hung up on either Bruestle's neck or some other part of his body or clothing, and Officer Weirich broke a bone in his hand. An X-ray revealed a fracture in the middle of the metacarpal (hand) bone just below the ring finger.

When the officers got Bruestle in handcuffs, Bruestle dropped his body weight and threw himself on the ground in a seated position. At this point, Bruestle was still actively thrashing, twisting, and turning his body. Officer Weirich held Bruestle on the ground, while Officer Thompson walked around and unlocked the patrol car. The officers stood Bruestle up and escorted him to the back of the vehicle. At this point, Bruestle was still resisting and continuing to thrash and twist his body, so the officers had to physically push him inside the door.

Once inside the vehicle, Bruestle was lying on his back with his feet up towards the windows. From this position, Bruestle started kicking at Officer Weirich's crotch. As Bruestle reared up to kick Officer Weirich again, Officer Weirich blocked his leg and pushed his upper body further back into the vehicle to close the door. Officer Weirich finally closed the door, and Bruestle was secured in the patrol vehicle.

Officer Thompson called for a supervisor to deliver a wrap restraint device. During the 15 minutes it took for another officer to arrive with a wrap device, Bruestle was kicking and banging on the windows inside the patrol vehicle. While inside the vehicle, Bruestle somehow moved his handcuffs and his hands from the back of his body to the front.

Once additional officers arrived on the scene, they took Bruestle out of the car to reposition the handcuffs. The officers were trying to double lock the handcuffs to ensure they did not tighten or loosen. Bruestle was twisting

5

and turning his body, making it difficult for the officers. The officers had difficulty getting the wrap restraint device on Bruestle. During the procedure, Bruestle started to lift his head and rock his shoulders while screaming. Bruestle was also placed in a spit sock because he had spit to the side of his mouth a few times. Once the wrap restraint device was secured, the officers placed Bruestle back into the patrol vehicle. Bruestle then said, "I may kill one or more of your officers."

Bruestle sustained a small cut on his right ear. Officer Thompson believed Bruestle's injury took place when he slipped his handcuffs over his head from around his back to his lap.

Bruestle testified on his own behalf claiming he had consumed four shots of fireball whiskey over a span of four hours and was intoxicated when the officers approached him. However, he knew that he had not committed vandalism that night. He was just walking to the beach after leaving a bar. Bruestle claimed he did not comply with the officers' demands to sit down on the curb because they were flanking him and he did not understand why they were contacting him.

Bruestle claimed that Officer Weirich pushed Bruestle's "body forward to slam [him] onto the hood of the car." Then, according to Bruestle, Officer Weirich "placed his thumb on [Bruestle's] carotid artery to restrict [his] breathing." Bruestle claimed he had tensed up and held onto the push bar to prevent from being slammed against the hood because the officers were pushing his private parts into the push bar. The bodycam video shows that the officers did not attempt to slam Bruestle against the hood.

Bruestle also claimed that after Officer Weirich unsuccessfully tried getting Bruestle's feet into the back of the patrol car, Officer Weirich struck him on the side of the head with a closed fist. Bruestle also denied kicking

Officer Weirich. Bruestle claimed the injury to his ear was sustained when Officer Weirich struck Bruestle in the head as he was pushing Bruestle into the patrol car.

DISCUSSION

Bruestle contends that resisting arrest without force under section 148 is a lesser included offense of resisting an executive officer by force under section 69. He argues there was sufficient evidence to support a finding he did not use force and thus the court should have instructed on the lesser offense. Finally, Bruestle argues any error was prejudicial.

After reviewing the record, we are satisfied there is no substantial evidence to support the lesser offense and that any error is harmless under the appropriate standard.

A. Legal Principles

Section 69 provides:

> "(a) Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment.
>
> "(b) The fact that a person takes a photograph or makes an audio or video recording of an executive officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a)."

Relying on *People v. Smith* (2013) 57 Cal.4th 232, 239-240, the parties agree that under the accusatory pleading test, section 148 is a lesser included

7

offense of section 69 as pled in this case. Therefore, we will address the rules for instructing on lesser offenses.

Where there is substantial evidence from which a reasonable jury could conclude that the lesser, but not the greater offense was committed, the court has a duty to instruct the jury on the lesser offense. (*People v. Cruz* (2008) 44 Cal.4th 636, 664; *People v. Flannel* (1979) 25 Cal.3d 668, 684.) It is not necessary to give an instruction on a lesser offense where the evidence is "minimal" and "insubstantial." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)

The force required to support a conviction under section 69 does not have to amount to an assault of the police officers. It is sufficient to show the defendant struggled with police, had to be taken down, or physically resisted the officers. (*People v. Bernal* (2013) 222 Cal.App.4th 512, 519; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 985-986.)

The fact the defendant struggled because the person feared the police might use force does not justify an instruction on the lesser offense of resisting with force. Rather, such concerns, at best, would relate to whether the police acted unlawfully in the illegal use of force. (Cf. *People v. Brown* (2016) 245 Cal.App.4th 140, 151, 154.) Bruestle does not argue that the force used by police to subdue him in this case was unreasonable.

Analysis

Bruestle resisted police right from the beginning of the encounter. He not only refused to comply with directions but used varying forms of physical force to avoid compliance. He grabbed the push bar of the police car and held tightly, requiring police to use force to remove his grip on the bar. Once cuffed, Bruestle dropped to the ground requiring the officers to literally shove him into the car. Once in the car, he attempted to kick the officers.

Ultimately, it took three officers, a body wrap, and spit sock before they could finally subdue Bruestle and take him into custody.

Given the amount of force required to qualify for violation of section 69, there is simply no substantial evidence in this record that would support a finding Bruestle resisted police but did not use force. The trial court did not err in refusing the requested lesser offense instruction.

Out of an abundance of caution we will briefly comment on prejudice. First, Bruestle argues we should apply the *Chapman* test for harmless error (*Chapman v. California* (1967) 386 U.S 18, 24). That is not the proper test for any instructional error in this case. In *People v. Breverman* (1998) 19 Cal.4th 142, 165, the court determined the proper test was that set forth in *People v. Watson* (1956) 46 Cal.2d 818. Applying *Watson,* we find there is no reasonable likelihood a different result would have occurred had the lesser offense instruction been given. The evidence of Bruestle's continuous use of force against the police efforts to subdue Bruestle is overwhelming. We also note the jury found, beyond a reasonable doubt, that Bruestle personally inflicted great bodily injury on one of the officers (§ 12022.7, subd. (a)). Bruestle suffered no prejudice from the court's refusal to instruct on the lesser offense.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

10