Filed 5/18/21  P. v. Sho CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MONSURU WOLE SHO,<br><br>    Defendant and Appellant. | 2d Crim. No. B303131<br>(Super. Ct. No. 16F-04609)<br>(San Luis Obispo County) |

Monsuru Wole Sho appeals the judgment entered after a jury convicted him of resisting an executive officer by force or violence (Pen. Code,[1] § 69, subd. (a)).  The trial court sentenced him to eight months in state prison and ordered the term to run consecutively to a three-year prison sentence he was already serving in another case for kidnapping and robbery.  Appellant raises claims of evidentiary and sentencing error.  We shall order that the abstract of judgment be modified to reflect that a court

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

operations assessment (§ 1465.8) and a conviction assessment (Gov. Code, § 70373) were not imposed. Otherwise, we affirm.

## STATEMENT OF FACTS

On the afternoon of May 5, 2016, California Highway Patrol Officer Douglas Patterson was on patrol when he saw a vehicle traveling at a speed of approximately 85 miles per hour in a 55 miles-per-hour zone. Officer Patterson activated his lights and effected a traffic stop.

Appellant was the driver of the vehicle and Michelle Harmon was sitting in the front passenger seat. The officer explained the reason for the stop and asked appellant for his driver's license. Appellant identified himself as "Michael Sho" and said he has a driver's license in Africa but not in the United States. He also claimed he did not have his wallet.

Officer Patterson asked appellant to exit his vehicle and walk with him to his patrol car. After appellant complied, the officer asked him to write down his name, address, and date of birth. Officer Patterson then asked appellant how old he was. Appellant gave conflicting information about his date of birth, which led the officer to believe he might have provided a false identification.

Officer Patterson told appellant to wait by the patrol car while he went to talk to Harmon, who was still sitting in the front passenger seat of appellant's vehicle. When the officer approached Harmon, he saw a man's wallet in a woman's purse that was open and on the floorboard in front of Harmon. Officer Patterson asked Harmon to hand him the wallet and she complied. After the officer obtained the wallet, appellant's demeanor changed and the officer had to repeatedly tell him to go back to the patrol car. Inside the wallet, Officer Patterson found

2

driver's licenses and debit cards bearing the names of other people.

Officer Patterson returned to his patrol car and placed the wallet on the dashboard of his patrol vehicle, where it was in view of the vehicle's dashboard surveillance camera (dash cam).[2] Appellant grabbed the wallet and the officer attempted to restrain him by placing his arm behind his back. Officer Patterson repeatedly ordered appellant to drop the wallet, but appellant refused to comply and fought with the officer. During the struggle, both men fell to the ground. Appellant kept fighting with Officer Patterson and said the officer "was going to have to kill him."

Officer Patterson was able to retrieve a can of pepper spray and sprayed appellant with it. The spray had no effect on appellant and he kept fighting with the officer. As the fight continued, appellant lifted himself off the ground and began carrying Officer Patterson. After the officer was able to regain his footing, he pulled out his collapsible baton and used it to push appellant into nearby vegetation. Officer Patterson then retrieved the keys from the ignition of appellant's vehicle so he could not drive away.

Appellant got up and ran back toward the patrol car, which had its keys in it with the ignition running. He reached for the driver's side door, then ran around to the other side of the car when he saw Officer Patterson chasing him. Appellant ran back to his own vehicle and got into the driver's seat. Officer Patterson approached appellant and pepper sprayed him for a

---

[2] The dash cam footage of the incident was played for the jury at trial.

second time, but once again it had no effect. Appellant then climbed out of his vehicle through the front passenger window.

While Officer Patterson went to his patrol car to retrieve a beanbag shotgun, appellant returned to his own vehicle, retrieved a satchel, and positioned himself at the front of the vehicle. Appellant removed what appeared to be a small caliber handgun from the satchel and pointed it at the officer. Officer Patterson retrieved his firearm and pointed it at appellant. Appellant stood up, held the satchel in front of his face, and began backing away. Appellant walked into the street, causing several vehicles to swerve to avoid hitting him, and threw several items on the grounds that he had retrieved from the satchel.

Appellant began walking back toward his vehicle. Officer Patterson repeatedly told appellant to put his hands up but he did not comply. As appellant stood about 35 feet from Officer Patterson, the officer repeatedly shot him with his beanbag firearm. Appellant ran off again, and Officer Patterson followed him in his patrol car. Appellant ran into a field and discarded several more items he had retrieved from his satchel.

Additional officers subsequently arrived and appellant was taken into custody. Officer searched the area and found four counterfeit driver's licenses, three debit cards, and a cell phone. No firearm was found.

## DISCUSSION

### *Evidence of Appellant's Possession of Counterfeit Identification and Debit Cards*

Appellant contends the trial court committed reversible error in admitting evidence of the counterfeit driver's licenses and debit cards that he attempted to discard after Officer Patterson contacted him. He claims the court erred in concluding

4

the evidence was relevant to prove his motive for resisting Officer Patterson in violation of section 69.  He also claims the evidence should have been excluded as more prejudicial than probative under Evidence Code section 352.  We are not persuaded.

Pursuant to Evidence Code section 1101, subdivision (b), "'[e]vidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity.  [Citations.]  The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect.  [Citation.]  When reviewing the admission of evidence of other offenses, a court must consider:  (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant.  [Citation.]  Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded."  [Citation.]'  [Citation.]  "'We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352."'"  (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.)

Appellant contends the challenged evidence was not relevant to prove his motive for resisting Officer Patterson in violation of section 69 because that offense is a general intent crime.  We disagree.  Although a defendant's "'*good or innocent*'" motives may be irrelevant to the determination whether he or she committed a general intent crime (see *People v. Kelly* (1990)

5

51 Cal.3d 931, 959, italics added), the evidence that appellant was in possession of counterfeit documents was not offered for such a purpose.

"When a defendant pleads not guilty, he or she places all issues in dispute, and thus the perpetrator's identity, intent and motive are all material facts. [Citations.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.) Even though motive is not a matter which must be proven, proof of a motive "'is material as evidence tending to refute or support the presumption of innocence.'" (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1017.)

Here, the challenged evidence was relevant to explain why appellant behaved as he did. (See *People v. Roldan* (2005) 35 Cal.4th 646, 707, overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [recognizing that "evidence of motive makes the crime understandable and renders the inferences regarding defendant's intent more reasonable"].) Moreover, the court reasonably found that the evidence was not unduly prejudicial. Although appellant also claims the court erred in failing to give a limiting instruction on the jury's consideration of the evidence, he did not request such an instruction so his claim is forfeited. (*People v. Clark* (2011) 52 Cal.4th 856, 942.)

In any event, any error in admitting the evidence was plainly harmless. Appellant was convicted of resisting an executive officer by force or violence under section 69. Officer Patterson's uncontradicted testimony and the dash cam footage unequivocally establish that appellant forcefully resisted the officer's efforts to detain him. When Officer Patterson tried to handcuff appellant, he pulled away from the officer and continued fighting with him after they both fell to the ground. In

6

light of this evidence, any reasonable juror would have found that appellant was guilty of violating section 69, regardless of his motive for doing so.  (See *People v. Bernal* (2013) 222 Cal.App.4th 512, 519, italics omitted [recognizing that "force used by a defendant in resisting an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction" under section 69].)  Because it is not reasonably probable that appellant would have achieved a more favorable result had the challenged evidence been excluded, his claim of prejudicial error fails. (*People v. Watson* (1956) 46 Cal.2d 818; see *People v. Winkler* (2020) 56 Cal.App.5th 1102, 1164, and cases cited therein [recognizing that claims of error in admitting other crimes evidence are evaluated under the *Watson* standard of review].)

### *Consecutive Sentencing*

Appellant also contends the court erred in ordering that his eight-month sentence run consecutively to the three-year sentence he was already serving in another case for kidnapping and robbery.  The court reasoned that the prior and current crimes had predominantly independent objectives (Cal. Rules of Court, rule 4.425(a)(1)), "involved separate acts of violence or threats of violence" (*id.*, rule 4.425(a)(2)), and "were committed at different times or separate places," rather than "a single period of aberrant behavior" (*id.*, rule 4.425(a)(3)).

Although each of these factors were independently sufficient to support the imposition of a consecutive sentence, appellant contends the court erred in imposing such a sentence because the court also stated "I was amazed that the officer had the restraint that he did.  I'm grateful you weren't shot." According to appellant, this statement reflects that the court violated rule 4.425(b)(3), which provides that "[a] fact that is an

7

element of the crime may not be used to impose consecutive sentences." But the court did not refer to any element of appellant's crime in making its observation. The court did not make any mention of appellant's use of force or violence, but rather merely noted that Officer Patterson had exercised great restraint in dealing with appellant and that appellant was lucky to have emerged from the encounter without serious injuries. Because the court did not rely on any element of the crime in imposing a consecutive sentence and cited three factors that were each independently sufficient to support such a sentence, appellant's claim of error fails.

### *Court Operations and Conviction Assessments*

At the sentencing hearing, the trial court stated that the $40 court operations assessment (§ 1465.8) and $30 conviction assessment (Gov. Code, § 70373) were "waived." The abstract of judgment, however, indicates that both assessments were imposed. Appellant contends, and the People correctly concede, that the abstract of judgment should be modified to conform with the court's oral pronouncement. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385, citation omitted ["Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls"].)

### DISPOSITION

The judgment is modified to reflect that a court operations assessment (§ 1465.8) and a conviction assessment (Gov. Code, § 70373) were not imposed. The superior court clerk shall prepare a modified abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

8

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



YEGAN, Acting P.J.



TANGEMAN, J.

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Will Tomlinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.