Filed 3/30/23  P. v. Felix CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHANE RYAN FELIX,<br><br>    Defendant and Appellant. | D079828<br><br><br>(Super. Ct. No. SCE398410) |

APPEAL from a judgment of the Superior Court of San Diego County, Herbert J. Exarhos, Judge.  Affirmed and remanded for resentencing.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag, Robin Urbanski and Eric Tran, Deputy Attorneys General, for Plaintiff and Respondent.


A jury convicted Shane Felix of multiple counts of resisting an executive officer, brandishing a firearm in the presence of an officer, and

being a felon in possession of a firearm, and returned true findings on several sentencing enhancements, including the personal use of a firearm in the commission of the offenses. The convictions stemmed from police intervention in Felix's attempted suicide. Felix was ultimately sentenced to eight years and nine months in prison.

On appeal from the judgment of conviction, Felix asserts that insufficient evidence supports his firearm-related convictions and enhancements. As we shall explain, we reject these arguments and affirm the convictions. Felix also asserts, and the People concede, that remand for resentencing is necessary in light of recent changes to Penal Code section 1170, subdivision (b).[1] The new law requires the lower term as the presumptive sentence if the defendant has experienced psychological, physical, or childhood trauma that is a contributing factor in the commission of the offense. We agree with the parties that remand for consideration of this new law in Felix's case is appropriate.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Prosecution's Case*

On January 6, 2020, around 6:00 p.m., three San Diego County sheriff's deputies responded to a call of a suicidal person at a home in the Lemon Grove neighborhood of San Diego. Felix's mother had called the authorities to report that he had slashed his wrists. The deputies planned to render medical aid if necessary and possibly place Felix on "a mental health hold" under Welfare and Institutions Code section 5150. When the deputies arrived, paramedics and an ambulance were waiting down the street.

Each deputy arrived separately in a marked patrol car, and each was wearing a full sheriff's uniform. Deputy Lisa Crill arrived first and waited

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

for Deputy Casey Dow before the two approached the house together. Deputy Matthew Poulin arrived last, when Crill and Dow were already at the front door. Crill knocked on the door and loudly announced, "sheriff's department." Felix's grandmother answered the door, and the deputies told her they had received a call that Felix had cut himself. The grandmother responded that he had not, but the deputies informed her they would still need to check on his welfare. The grandmother consented to the deputies entering the home and she pointed to the direction of the bedroom where Felix was located.

Crill knocked on the bedroom door. When there was no answer, she opened the door and Felix was there. Crill saw a cut on Felix's wrist and Dow saw blood splatter on the wall. Crill asked Felix to step into the short hallway, and he complied. Crill did not pat Felix down first. As Felix exited the bedroom, Poulin and Crill asked Felix several times to sit on a barstool in the nearby kitchen. Felix, however, ignored the request and walked further down the hall into the living room where he sat on a couch.

Crill then told Felix she was going to search him for weapons. Felix stood, then reached into the left side of his jacket pocket and pulled out a large firearm. All three deputies believed the firearm was real, and all three believed Felix was going to shoot them. The jury viewed body-worn-camera footage from each of the three deputies, which corresponded with the deputies' trial testimony of the events.

B. *The Defense Case*

Felix's mother testified in his defense. She told the jury that as a teenager Felix suffered from depression but was otherwise normal. He started having problems as a young adult after her ex-boyfriend hit him in the head with a brick and assaulted him when he was about 18 years old. When Felix was in his early 20s, he was hit in the head with a hammer. He

sustained head injuries, and his mother testified that Felix "ha[d] not been right since then." Felix went to counseling and attended community college classes to learn to cope with his brain injuries.

On January 6, 2020, Felix called his mother in the morning; he was depressed and drunk. They had text and phone communications throughout the day, and Felix seemed to get progressively more depressed. At one point, Felix texted her that his hand was bleeding and that he was trying to die. Felix's mother tried and failed to reach her mother (Felix's grandmother), who Felix was living with, to see if he was okay. She then called the non-emergency line for the sheriff's department.

Defense counsel also presented the testimony of Dr. Kristina Malek, a clinical and forensic psychologist. Dr. Malek interviewed Felix to evaluate his mental health, provide diagnoses, and assess him for his propensity to commit violence. She stated that he had a history of polysubstance abuse, difficulties associated with depression, and "his thought processes were marked by confusion, destructibility, and difficulty concentrating." Dr. Malek also testified that Felix had mild neurocognitive disorder due to the traumatic brain injury reported in his history. She believed Felix suffered from major depressive disorder, generalized anxiety disorder, and alcohol-use disorder.

Dr. Malek opined that Felix was a low risk for violence in the community—although he was a risk to himself—despite the fact that he previously committed arson of his grandmother's home while his aunt and another person were inside. Dr. Malek concluded that Felix did not suffer from schizophrenia, psychotic disorders, bipolar disorder, disassociated disorders, or delirium. In his interview with Dr. Malek, Felix "denied that he was trying to commit suicide by cop."

4

C. *Conviction and Sentencing*

On October 20, 2021, the jury found Felix guilty of three counts of resisting an executive officer (§ 69; counts 1–3); the jury further found that he personally used a firearm (§ 12022.5, subd. (a)) and that he was on probation (§ 1203, subd. (k)) when he committed the offenses. The jury also found Felix guilty of exhibiting a firearm in the presence of an officer (§ 417, subd. (c); count 4), and found that he personally used a firearm in the commission of the offense (§ 1192.7, subd. (c)(8)) and that he was on probation at the time (§ 1203, subd. (k)). Finally, the jury found Felix guilty of being a felon in possession of a firearm (§ 29800; count 5).

Thereafter, several prior conviction allegations against Felix were tried to a jury. The jury found he had a prior arson conviction that qualified as both a serious felony prior and a strike offense. (§§ 667, subds. (a), (b)–(i), 668, 1170.12.)

On November 18, 2021, the trial court sentenced Felix to the mid-term for the three counts of resisting an officer, doubled to four years due to the prior strike conviction with the counts to be served concurrently, plus the mid-term of four years for the firearm enhancement. The court sentenced Felix to the mid-term on the remaining counts with the terms to be served concurrently. The court ordered stricken the serious felony prior. Finally, the court imposed a term of one year and eight months (one-third the mid-term of five years) on the arson case for which probation was revoked. The court sentenced Felix to a total of nine years and eight months in state prison. Felix timely appealed from the judgment.

DISCUSSION

I

*Sufficient Evidence Supports the Convictions for Resisting Arrest*

Felix challenges his convictions under section 69 on two grounds.  He first asserts that insufficient evidence supports the finding that he resisted the arrest with force or violence.  Second, he contends that insufficient evidence supports the finding that he knew the deputies were performing a lawful duty.

A

Section 69, subdivision (a) states:  "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."  "[S]ection 69 is designed to protect a police officer … against violent interference with the performance of his duties."  (*People v. Buice* (1964) 230 Cal.App.2d 324, 336.)

"The statute sets forth two separate ways in which an offense can be committed.  The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty."  (*In re Manuel G.* (1997) 16 Cal.4th 805, 814 (*Manuel G.*).)  The distinction between the two types of resisting is whether the defendant is "attempting to deter" the officer, or is "actually resisting."  (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 984–985 (*Carrasco*).)  The first type of offense can be

established by " ' "[a] threat, unaccompanied by any physical force" ' and may involve either an officer's immediate or future performance of his duty." (*Ibid.*, citing *People v. Lacefield* (2007) 157 Cal.App.4th 249, 255 (*Lacefield*).) The second type of offense involves "force or violence" by the defendant against an officer engaged in his duties at the time of the defendant's resistance. (*Ibid.*) Here, Felix was charged with and tried on the theory that he was guilty of the second type.

In determining whether sufficient evidence supports the convictions under section 69, we review the entire record in the light most favorable to the judgment and presume in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People v. Brown* (1995) 35 Cal.App.4th 1585, 1598.) A conviction will not be reversed for insufficient evidence unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the verdict]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

B

Contrary to his assertion on appeal, the evidence in the record supports the jury's conclusion that Felix resisted, with force or violence, the law enforcement officers who were engaged in their duties at the time of the encounter. The body camera footage of the three deputies who responded to the scene shows that Felix ignored the deputies' clear directions to be seated in the kitchen and then, when Deputy Crill told Felix she was going to pat him down for weapons, he stood and pulled a gun by its grip from inside the jacket he was wearing. While the body camera videos all cut off before the

7

gun is fully pointed at the deputies, all three deputies testified that Felix pointed the gun at them.  In addition, all three deputies testified that in this moment they believed Felix was going to shoot them and feared for their lives.  We agree with the People that this evidence supported the jury's finding that Felix resisted the officers in the performance of their legal duties with force or violence.

Felix argues that the evidence shows merely that he possessed a firearm, which is insufficient to establish the requisite element of force or violence.  However, the jury rejected this interpretation of the evidence.  Instead, the jury credited the testimony of the deputies that Felix pulled the weapon from his jacket and pointed it at them.  We decline Felix's invitation to reassess the evidence and agree with the People that there is sufficient evidence to establish the element of resisting arrest by the use of violence.  (See *People v. Smith* (2005) 37 Cal.4th 733, 739 ["it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends"].)  The cases and statutes that Felix relies on to support his argument do not lead us to conclude otherwise.

Specifically, Felix looks to *Carrasco, supra*, 163 Cal.App.4th 978, *People v. Bernal* (2013) 222 Cal.App.4th 512 (*Bernal*), and a case analyzing section 190.3, which sets forth aggravating factors to be considered in death penalty sentencing.  *Carrasco* considered whether the court's failure to instruct on the lesser included offense of section 148, subdivision (a) was error under the facts of the case.  (*Carrasco,* at pp. 984–986.)  The court concluded the instruction was not required because the evidence showed without question that the defendant used force in resisting the officers.  (*Id*. at p. 986.)

Further, no contrary evidence to support the lesser included offense was contained in the record. (*Ibid*.)

In *Bernal*, this court rejected the defendant's argument that a violation of section 69 required a showing that the defendant used force or violence *against or on* the executive officer. When the officer began to handcuff the defendant, the defendant attempted to escape, pushing the officer with his body, then running and dragging the officer about 10 yards before they fell and another officer helped get the defendant into handcuffs. (*Bernal, supra*, 222 Cal.App.4th at p. 515.) The defendant argued that "there was no showing that he used force *against* or *on*" the officer. (*Id*. at p. 517.)

This court, relying on *Carrasco*, held that "a violation of section 69 need not involve any force or violence directed toward the person of an executive officer. Rather … force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction. In this regard, given the court's detailed description of the defendant's conduct—which did not involve any force directed at any of the arresting officers—the court's reference to 'force or violence' against an officer (*Carrasco, supra*, 163 Cal.App.4th at p. 985) plainly includes force or violence used in *resisting* arrest." (*Bernal, supra*, 222 Cal.App.4th at p. 519.)

Felix asserts that these two cases show the "section 69 legal landscape does require an actual, physical act by the defendant." Even if this assertion were accurate, however, the evidence here shows the "physical act" by Felix of drawing a weapon on the officers. This act satisfies the required element of resisting arrest with force *or violence*. Further, *Carrasco* and *Bernal* do not hold that "an actual physical act by the defendant" is required to satisfy the statute. Instead, the cases considered the facts before them and concluded the evidence of the defendants' efforts to avoid arrest constituted resistance

9

by force or violence. We do not agree with Felix that these cases support reversal of his conviction.

We are also not persuaded by Felix's analogy to section 190.3. In determining whether the perpetrator of first degree murder with special circumstances should be sentenced to the death penalty, that statute directs the jury to consider, among other factors, "the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved the express or implied threat to use force or violence …." (§ 190.3.) Felix argues *People v. Jackson* (1996) 13 Cal.4th 1164 (*Jackson*), which considered the statute, supports reversal here. We disagree.

In considering whether evidence of the defendant's possession of a firearm when he was apprehended for a prior rape after escaping from prison was admissible under this factor, the *Jackson* court rejected the defendant's argument that the evidence should not have been admitted because it did not involve the use or attempted use of force or violence, or the express or implied threat to use force or violence. (*Jackson, supra*, 13 Cal.4th at pp. 1191, 1235.) In so holding, the court stated, " 'It is settled that a defendant's knowing possession of a potentially dangerous weapon in custody is admissible …. Such conduct is unlawful and involves an implied threat of force or violence even where there is no evidence defendant used or displayed it in a provocative or threatening manner.' [Citation.] Similarly, a defendant who arms himself after having escaped from custody can be presumed to be in possession of the gun to assist his continued flight rather than for legitimate self-defense or some other lawful purpose. Possession under these circumstances amounts to 'substantial evidence of an implied threat of violence' admissible under section 190.3." (*Jackson,* at pp. 1235–1236.)

10

We reject Felix's assertion that this holding supports the conclusion that drawing a firearm on executive officers, as Felix did, does not amount to an act of force or violence. Unlike *Jackson*, this case does not involve mere possession of a firearm. It involves the very different, and violent, act of pointing a gun at the sheriff's deputies who responded to Felix's suicide attempt.[2]

## C

Felix next argues that insufficient evidence supported the jury's finding that he knew the deputies were performing their lawful duties at the time of the encounter. He asserts that he was unaware because of his traumatic brain injury and probable intoxication. The People respond that this argument lacks merit. We agree.

On review, this court considers whether substantial evidence supports a finding that while appellant resisted the deputies, the deputies were acting "in the performance of [their] duty." (§ 69.) "The longstanding rule … is that a defendant cannot be convicted of an offense against a peace officer ' "engaged in … the performance of … [his or her] duties" ' unless the officer was acting lawfully at the time the offense against the officer was committed." (*Manuel G., supra*, 16 Cal.4th at p. 815, italics omitted.) Additionally, when a defendant is charged with the second method of violating section 69, the People must prove that the defendant "knew" the

---

2      Because sufficient evidence supports the convictions under section 69, we do not reach the question presented by Felix of this court's authority to modify the convictions to the lesser included offenses of resisting a peace officer under section 148, subdivision (a). (See *People v. Navarro* (2007) 40 Cal.4th 668, 767 ["an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense"] (*Navarro*).)

officer was performing his duty at the time the defendant used force or violence to resist the officer. (*Lacefield, supra*, 157 Cal.App.4th at pp. 256–257.)

Here, there is substantial evidence that Felix knew the deputies were performing their duties when he used force and violence to resist them. The body-worn camera footage shows that the deputies arrived at the home in uniform. They announced "sheriff's department" when they came to the door. When they opened the door to the room where they found Felix, Crill, in full uniform, introduced herself as "Deputy Crill." In performing her duties, she asked Felix to show her his hands, and he complied. She then asked him to exit the room, and again, Felix complied.

Once in the common area, Crill asked Felix whether he had any weapons on him, and he replied, "no." Deputy Crill asked if she can "check real quick," Felix hesitated for a second, said she could, and proceeded to stand up. When Crill then asked Felix to put his hands behind his back, he reached inside his jacket for the firearm. In addition, Felix's expert, Dr. Malek, testified that Felix described the deputies as police when she interviewed him about the incident.

The footage of this incident and Dr. Malek's testimony sufficiently support the jury's finding that Felix knew the deputies were lawfully performing their duties when he resisted them.

## II

*Sufficient Evidence Supports the Convictions for Brandishing*

Felix contends insufficient evidence supports the jury's finding that he exhibited the gun "in a rude, angry, or threatening manner," which is required for a conviction under section 417, subdivision (c). The People respond that Felix's actions were threatening, and the evidence of those

actions sufficiently supports the conviction. Again, we agree with the People that the evidence before the jury, specifically the body camera footage and the testimony of the deputies, supports the jury's finding.

Under section 417, subdivision (c), "Every person who, in the immediate presence of a peace officer, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, and who knows, or reasonably should know, by the officer's uniformed appearance or other action of identification by the officer, that he or she is a peace officer engaged in the performance of his or her duties, and that peace officer is engaged in the performance of his or her duties" is guilty of the crime of brandishing.

To establish guilt, the prosecution must prove: "(1) The defendant drew or exhibited a firearm in the immediate presence of a peace officer; (2) The defendant drew or exhibited the firearm in a rude, angry, or threatening manner; (3) When the defendant acted, the officer was lawfully performing his or her duties; and (4) When the defendant acted, he … should have known, … that the person was a peace officer who was performing his or her duties." (CALCRIM No. 981.) Pointing the gun at the victim is not an element of the crime. Rather, the offense is complete on exhibition of the weapon in a rude, angry, or threatening manner. (*People v. Mercer (*1980) 113 Cal.App.3d 803, 806 (*Mercer*).)

Felix asserts that he did not point the weapon at the officers, therefore, there was insufficient evidence to support the conviction. This argument misinterprets the facts in the record and the law. First, as discussed, all three deputies testified that Felix pointed the weapon at them when he drew it from his jacket. This evidence supports the jury's finding that Felix exhibited the weapon in a threatening manner.

13

Second, the law does not require the gun to be pointed at the officers in order for the exhibition of the weapon to be found threatening. (*Mercer, supra*, 113 Cal.App.3d at p. 806.) Thus, even if we assume Felix did not point the weapon at the officers, we agree with the People that the body camera footage—which they concede ends without showing whether Felix pointed the weapon at the officers—supports the jury's finding. The video shows Felix refusing to comply with the officers, and instead pulling a gun from his jacket. This action constituted exhibiting the firearm in a threatening manner.[3]

As with section 69, Felix also argues there was insufficient evidence he knew the deputies were performing a lawful duty. As discussed in the prior section, this argument lacks merit.[4]

---

[3] Felix cites *Mercer, supra*, 113 Cal.App.3d 803, and *People v. Sanders* (1995) 11 Cal.4th 475, to support his argument that "some overt, affirmative action" must have taken place to support the brandishing charge. As discussed, there was evidence of an "overt, affirmative action" by Felix. Further, if anything, these cases support affirmance here. *Mercer* rejects the defendant's attempt to relitigate the case on appeal, holding the evidence there clearly supported the jury's findings. (*Mercer,* at p. 806.) *Sanders* rejected the defendant's assertion that the court erred by admitting evidence of a prior felony conviction for purposes of determining if the special circumstances permitting imposition of the death penalty existed. (*Sanders,* at pp. 541–542.) The court rejected the defendant's argument that the elements of brandishing were not satisfied where the victim testified that the defendant pointed a rifle at him. (*Ibid*.)

[4] Because we determine that sufficient evidence supported the conviction under section 417, subdivision (c), we do not reach the question presented by Felix of this court's authority to modify the convictions to the lesser included offenses of brandishing under section 417, subdivision (a)(2). (See *Navarro, supra*, 40 Cal.4th at p. 771.)

14

# III

*Sufficient Evidence Supports the Personal Use of a Firearm Findings*

Mirroring his argument concerning sections 69 and 417, subdivision (c), Felix also argues insufficient evidence supports the jury's findings that he intentionally displayed the firearm in a menacing manner, as required by the enhancement statutes, sections 1192.7, subdivision (c)(8) and 12022.5, subdivision (a). He again points to the body-worn camera footage, stating it shows he "pulled out the gun by its stock, kept it pointed downward; and then began backing away." He asserts this is evidence showing he did not display the gun in a menacing manner.

A finding that appellant personally used a firearm in violation of sections 1192.7, subdivision (c)(8) and 12022.5, subdivision (a) requires the jury to find the defendant " 'intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it' as to each victim." (CALCRIM No. 3146; *People v. Rivera* (2019) 7 Cal.5th 306, 333; see also *People v. Granado* (1996) 49 Cal.App.4th 317, 322 [application of section 12022.5, subdivision (a) is not limited to situations where gun was pointed at victim or defendant used explicit threats of harm]; *People v. Funtanilla* (1991) 1 Cal.App.4th 326, 330–331 [" 'use' " under section 12022.5 "means more than possession of a weapon or the bare potential for use, but does not require conduct that actually produces harm"].) An appellate court reviews the sufficiency of the evidence to support an enhancement using the same standard that is applied to a conviction. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

We agree with the People that, as with the other charges, the jury's findings on these enhancements were supported by the evidence. As discussed, although the body camera footage ends without showing Felix

15

aiming the gun at the sheriff's deputies, this does not establish the conduct was not menacing. To the contrary, the jury was free to reject Felix's interpretation of the video and instead conclude his conduct, specifically pulling the gun from his jacket and, as the deputies testified, pointing it at them, was menacing.

IV

*Resentencing Under Section 1170 is Required*

Felix's final argument is that resentencing is required under recent changes to section 1170, subdivision (b). The People concede the new law applies and that resentencing in this case is appropriate. We accept the concession.

Assembly Bill No. 124 amended the determinate sentencing law to make lower term sentencing presumptive under certain circumstances. (Stats. 2021, ch. 695, § 5.3.) As relevant here, lower term sentencing is presumptively appropriate where a defendant "has experienced psychological, physical, or childhood trauma" and that trauma "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A); see Cal. Rules of Court, rule 4.420(e)(1).) Where the presumption applies, the court must apply the lower term unless it "finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) As the People appropriately concede, this amendment applies retroactively to Felix because his judgment of conviction is not final. (*In re Estrada* (1965) 63 Cal.2d 740, 744; see *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.)

Evidence in the record before this court suggests that Felix might qualify for sentencing under this new law based on past trauma. As the People acknowledge, absent a more complete record of Felix's history it is not

16

possible to determine if he suffered from a qualifying condition, whether such a condition contributed to the instant offenses, and whether imposition of the lower term would be contrary to the interests of justice. Accordingly, the matter is remanded to the trial court for a resentencing hearing. On remand, both the prosecution and Felix shall have the opportunity to present additional evidence and information to permit the trial court to make a sentencing decision under section 1170, subdivision (b)(6).

## DISPOSITION

This matter is remanded for resentencing consistent with Penal Code section 1170, subdivision (b) as amended. Following resentencing, the court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.

17