Filed 6/9/21  P. v. Rines CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074123 |
| v. | (Super.Ct.No. SWF1907079) |
| STEPHEN WILLIAM RINES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark A. Mandio, Judge.
Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Kathryn Kirschbaum and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Stephen William Rines was convicted on three counts of resisting an executive officer by force or violence in violation of Penal Code section 69.[1] Rines contends that these convictions must be reversed for four reasons: (1) the verdict was the product of coercion because the trial court required the jury to continue deliberating even after it was "hopelessly deadlocked"; (2) the trial court gave conflicting and incorrect supplemental instructions on the force element of the offense; (3) defense counsel provided prejudicially ineffective assistance of counsel by stipulating to a supplemental instruction defining "force"; and (4) the trial court failed to instruct the jury on simple assault as a lesser included offense.

We affirm the judgment. We find no error in the trial court's management of the jury or in its supplemental instructions, and Rines has not demonstrated ineffective assistance of counsel. The jury should have been instructed on simple assault as a lesser included offense, but on the facts here, the error was harmless.

## I. BACKGROUND

On February 8, 2019, Rines was an inmate at a Riverside jail. That morning, correctional officers conducted random cell searches for contraband. After Rines's cell was searched, he had a heated conversation with correctional officers that escalated to a physical altercation, resulting in minor injuries to Rines and two officers.[2] According to

---

[1] Undesignated statutory references are to the Penal Code.

[2] One officer had a bruise and scratches on his arm. Another had three three-inch scratches on his neck. Rines had a bump or abrasion on his forehead, as well as bruising,

2

the testimony of five officers, Rines physically resisted their efforts to handcuff him.

Rines, testifying in his defense, conceded that he had been upset with how the search of

his cell had been conducted but denied that he resisted the officers. The defense argued

that Rines did not resist or use force against the officers and that, to the extent he may

have struggled, it was only a reflexive, defensive effort to protect himself from the

officers' unreasonable and excessive use of force. The jail's security system recorded

video (without audio) of the incident, which was played for the jury.

The jury found Rines guilty on the three charged counts of resisting an executive

officer by force in violation of section 69, one for each of three of the correctional

officers involved. On the prosecution's motion, the trial court dismissed alleged prison

prior enhancements of those charges. The court sentenced Rines to two years in prison,

through concurrent terms on each of the three counts.

## II. DISCUSSION

### A. *Jury Coercion*

#### 1. *Additional Background*

In a discussion with counsel before voir dire, the trial court indicated it intended to

estimate for prospective jurors that the trial would last through Thursday of the next

week, based on the calculation that evidence and argument would likely be completed by

---

mainly to his head and face. He also stated that he had been "punched in the gut" and that he experienced pain from a pre-existing back condition that causes "severe nerve pain," and that was exacerbated by the actions of the officers. He further testified that he became dizzy and lost consciousness, at least momentarily, during the altercation. Rines was hospitalized for about four hours before he was medically cleared and returned to jail.

3

the next Tuesday, plus two full days for deliberations. The court noted that "I tell them they can deliberate as long as they want, but for me to figure out how much time it's going to take, that's what I do."

The parties' closing arguments were held on the next Tuesday, as anticipated, after which the jury deliberated for about three hours before adjourning for the day. On Wednesday morning, after about 45 minutes of deliberations, the jury submitted a question to the court, asking for clarification of the definition of the term "force." After consulting with counsel by telephone, the court responded by referring the jury to its instructions, and specifically the portion of CALCRIM No. 200 that states: "Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

A short time later, the jurors sent another note, stating that it was unable to reach a unanimous verdict. After consulting with the parties, the jurors were brought into court, and the foreperson clarified that they had deadlocked on all three counts. The court told the jury that its usual practice was to give some additional instructions and ask them to resume deliberations. The court further stated: "I wouldn't be asking you to deliberate for a million years, but try a couple different approaches[....] I know you put a ton of effort into it, but I generally would ask you to do that." The court then instructed the jury with a modified version of CALCRIM No. 3551.[3]

---

[3] The trial court's instruction as given—essentially CALCRIM No. 3551 with some additional commentary—was as follows:

4

After giving the additional instruction, the court asked the foreperson whether he thought that "any of that may help." The foreperson responded negatively, stating that the jury had already done what the additional instruction suggested, and stating that the court's earlier response to the jury's question about the definition of "force" had not been helpful. The court asked the other jurors whether they agreed with the foreperson's assessment; all except one did. The court then asked how the jury was split. The foreperson responded that after a first vote, they had been split eight to four in favor of

---

"[S]ometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts. Please consider the following suggestions.

"Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views.

"Each of you must decide the case for yourself and form . . . your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can. Do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the Defendant are entitled to the individual judgment of each juror.

"It is up to you to decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective.

"So a couple examples. You might want to consider like role playing or something—I like the idea of kind of being the devil's advocate. So a person who took one position has to argue the other way around, right, understanding that that wasn't your position. And then somebody else, who had another position, the opposite position, argues the opposite of what they voted for.

"Okay. Just a little side note. Growing up, my father was a lawyer, and he would sit around the kitchen table, and he was constantly be[ing] the devil's advocate. It drove us nuts, but he'd argue these positions just because we took the opposite point of view. But he was trying to teach us something. Sometimes you get some [insight] by doing that.

"Also, let me know whether I can do anything to help you further, such as give additional instructions or clarifying instructions I have already given you. One caveat about that, I can tell you what the law is. I can't help you determine what the facts are. That is up to you guys."

guilt, and after a second vote they were now split nine to three in favor of guilt. The foreperson noted that, although they "were able to change one vote . . . the three that are not changing have stated that nothing is going to change that position. And the opposite way of the nine, nothing is going to change that position." The court then sent the jury out so that the court could confer with counsel.

After consulting with counsel, and after the jury returned, the trial court noted the jury's question about the word "force," and inquired whether additional argument on "just that issue of force . . . might be helpful in breaking the deadlock." The foreperson stated that such argument would be helpful, and the rest of the jury concurred.[4]

Out of the presence of the jury, the prosecution and the defense stipulated to the court instructing the jury with a particular dictionary definition of the word "force." That afternoon, the trial court gave the instruction defining "force," the parties made their arguments, and the jury retired to deliberate further.

After more than an hour of additional deliberations, the jury sent a note with three additional questions, including one directly related to the force element of the charged offenses. The court answered those questions, albeit over an objection from the defense

---

[4] The record does not reflect the exact results of the "[s]how of hands" that the court requested on the issue, but we infer that the vote was in favor of additional argument.

on the answer related to the force element.[5] After the court provided its answers, the jury foreperson indicated that the earlier, dictionary definition of the term "force" that had been given as a supplemental instruction had been a focus of disagreement among the jurors.[6] The trial court responded that it hoped that the "additional instruction will clear that up."

By this time, it was late in the day, but there remained some time for the jury to deliberate. In sending the jury to resume deliberating, the trial court referred to its pretrial estimate of how long the trial would take, confirming that the pretrial estimate was that the "end" would be the next day, Thursday. The court noted that it would be sending a printed copy of the newest supplemental instruction back to the jury room, and it indicated that the jury could "discuss [its] finishing time with the deputy." Less than 15 minutes later, however, the jury returned its verdict.

---

[5] We discuss both of the court's supplemental instructions related to the force element of the offense in detail below, addressing Rines's contention that they were erroneous.

[6] In full, the foreperson commented: "Your Honor, we don't have a problem with level of force. That maybe shouldn't have been put in there. It was the definition you gave us in type that stated that force must be directed against a person or a thing in order to be considered force, and that's where the question really results. But you gave us that explanation. But the one you gave us in definition did not match—it kind of contradicts it a little bit."

## 2. *Analysis*

Rines argues that the trial court's directions that the jury continue deliberations after they reported a deadlock coerced the verdict in violation of his federal and state constitutional rights. We are not persuaded.

"Section 1140 provides in relevant part that a 'jury cannot be discharged' without having rendered a verdict unless, 'at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 88.) "'The decision whether to declare a hung jury or to order further deliberations rests in the trial court's sound discretion.'" (*Ibid.*, quoting *People v. Debose* (2014) 59 Cal.3th 177, 209.) "However, a court must exercise its power under section 1140 without coercing the jury, and 'avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency."'" (*People v. Brooks*, *supra*, 3 Cal. 5th at p. 88.) In considering whether a jury was unduly "'pressured into reaching a verdict,'" we must look at the trial court's actions in context and consider all the "'particular circumstances of the case.'" (*Ibid.*)

Here, after about four hours of deliberations—not an extraordinarily long time— the jury informed the trial court that it had reached an impasse. The jurors indicated that the difficulty in reaching a unanimous verdict was related to a particular element of the charged offenses. Although a general instruction on breaking through a deadlock did not seem helpful, the *jurors* believed that additional argument on their sticking point might be helpful. After the argument and more deliberations, the jury submitted further

clarifying questions, but it did *not* again declare itself to be at an impasse. The jury received answers to its questions, and soon thereafter reached a unanimous verdict on each of the charged offenses. We find nothing coercive about this series of events.

Rines argues that the trial court unduly pressured jurors by inquiring about their numerical division, including about what side was in the minority. He proposes that "the judge's decision to send [the jury] back to the jury room in hope of obtaining a unanimous verdict operated as a signal that the jurors who voted not guilty should reevaluate and change their views." We disagree. Our Supreme Court has "expressly approved of inquiring into a jury's numerical division in the event of a deadlock." (*People v. Debose* (2014) 59 Cal.4th 177, 210.) The trial court did not suggest that jurors should reconsider their views in light of the numerical breakdown. It also did not communicate any preference for movement one way or the other in resolving the deadlock, nor did it chastise jurors for having failed to reach a unanimous verdict. To the contrary, the trial court instructed that jurors were to "deliberate with the goal of reaching a verdict *if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict.*" (Italics added.)

Rines also argues that the trial court's reference to its pretrial estimate of how long the trial would take "pressur[ed] the jurors to reach agreement by reminding them that the time allocated for the trial would soon expire." The trial court, however, apparently emphasized to jurors that its estimate was no more than that, an estimate made for its own

9

purposes, and that "they can deliberate as long as they want." Also, the comment at issue was made on Wednesday afternoon, and the pretrial estimate had been that the trial could last through Thursday; the "end" was not that close. Moreover, the trial court had asked the jury to "try a couple different approaches" and continue deliberating, but it emphasized that it "wouldn't be asking [them] to deliberate for a million years." There was no reason for the jury to feel unduly pressured in these circumstances.

Rines has not demonstrated that the trial court abused its discretion in managing the jury. The record does not support his contention that the verdict should be viewed as the product of coercion, rather than the considered judgment of each individual juror.

B. *Supplemental Instructions on Force*

1. *Additional Background*

To convict Rines of violating section 69, the prosecution had to prove, among other things, that he resisted an executive officer "'by the use of force or violence.'" (See *People v. Smith* (2013) 57 Cal.4th 232, 241(*Smith*).) Our Supreme Court has noted that "section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.'" (*Id.*, *supra*, 57 Cal.4th at p. 240.) Each count against Rines alleged that he violated section 69 in both ways. At trial, however, the prosecution relied solely on the second way, and the jury was instructed accordingly with CALCRIM

10

No. 2652, which includes as the first element of the offense that the defendant "unlawfully used force or violence to resist an executive officer."

The term "force" is not separately defined in CALCRIM No. 2652 or the other instructions initially given to the jury. As such, the jury was to apply the "ordinary, everyday meaning[]" of the term, as instructed by CALCRIM No. 200. When the jury first requested clarification of the definition of the term "force," the trial court referred it to CALCRIM No. 200.

Once the jury indicated that it wished to hear additional argument on the issue of force, however, the parties agreed that the jury should be given a supplemental instruction that provided a dictionary definition of the word: "Force is power or pressure directed against a person or thing." The parties then made their arguments as to whether the force element of the offenses had been proven.

After further deliberations, the jury asked for further clarification: "If a person moves away from an arresting officer while being restrained, is that level of force directed against the arresting officer?"[7] The trial court, over a defense objection, responded: "This seems kind of like a mixed question to me. So I can answer what appears to be the legal portion of it, but not the factual portion [....] So the law is this: A violation of Penal Code section 69 need not involve any force or violence directed toward the person of an executive officer. Rather, force used by a defendant in resisting an

---

[7] The jury also asked whether it was "allowed to consider the lesser crime definition in relation to [Penal Code section] 69" and whether it was "okay to discuss the lesser crimes before reaching a unanimous decision on [Penal Code section] 69."

11

officer's attempt to restrain and arrest the defendant is sufficient to support a conviction. Now, here is the thing, though. The question you asked me about is that level of force directed against the arresting officer. I can't make that determination. That's a factual determination. It's something you have to decide."

### 2. *Analysis*

Rines proposes various reasons why each of the supplemental instructions on force were erroneous. "We review defendant's claims of instructional error de novo." (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) We find no error.[8]

Regarding the trial court's first supplemental instruction, Rines argues that "the court should not have instructed the jury at all as to a definition of force because that was a factual issue for the jury to decide." Rines is incorrect. Neither section 69, nor case law interpreting that statute has adopted a "technical, legal meaning" of the term "that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) This just means, however, that as a matter of *law* the meaning of "force" as used in section 69 is the one ""commonly understood by those familiar with the English language.""" (*Ibid.*; see CALCRIM No. 200.) There is no authority in support of the notion that the meaning of statutory language could somehow become a "factual issue for the jury to decide," as Rines proposes.

---

[8] The People argue that Rines forfeited some of his instructional error arguments by failing to raise them in the trial court. We find it more expedient, however, to address Rines's claims on the merits.

Generally, the trial court is not required to define common terms in jury instructions, because there is no need. (See, e.g., *People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1351.) Nevertheless, where a jury *has* expressed confusion about the meaning of a common term, the trial court "must at least *consider*" whether an additional explanation is appropriate, or whether "it should merely reiterate the instructions already given." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97; see *People v. Chaffin*, *supra*, 173 Cal.App.4th at p. 1351 [trial court has no duty to give a clarifying instruction, *absent a request*, if a term in an instruction has a plain and unambiguous meaning that is ""'commonly understood by those familiar with the English language"'"].) Here, the jury repeatedly expressed confusion about the meaning of a term in its instructions, so it was appropriate for the trial court to consider giving an additional explanation.

Furthermore, in both criminal and civil contexts, "'[c]ourts frequently consult dictionaries to determine the usual meaning of words.'" (*People v. Leal* (2004) 33 Cal.4th 999, 1009, quoting *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 16.) Here, the trial court did so, and the parties agreed that a particular dictionary definition was appropriate as a supplemental instruction to address the jury's confusion. On its face, therefore, it was not unreasonable for the trial court to address the jury's expressed confusion about the meaning of the term "force" in the manner that it did.

Of course, words may have various meanings, some of which may be inapplicable or confusing for one reason or another in a particular legal context. "Even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct,

13

it must do so correctly." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.) We turn, then, to Rines's contentions that the trial court here failed to do so.

His stipulation to the definition notwithstanding, Rines now contends that the dictionary definition of force given to the jury was an inaccurate statement of the law in several respects. First, without citation to case authority addressing section 69, he argues that the definition "failed to convey to the jury that it should consider the defendant's size and physical condition against that of the purported victims in determining whether force was used." Nothing in law or logic, however, suggests that any disparity of size or strength is relevant to whether the defendant used force to resist an executive officer. Section 69 is "designed to protect police officers against violent interference with performance of their duties." (*People v. Martin* (2005) 133 Cal.App.4th 776, 782 (*Martin*).) The circumstance that an officer or group of officers may be capable of physically overwhelming a defendant does not render the defendant's use of force to resist any less criminal.

As Rines emphasized at oral argument, he relies on *People v. Mungia* (1991) 234 Cal.App.3d 1703 (*Mungia*) and *People v. Wright* (1996) 52 Cal.App.4th 203 (*Wright*) for the notion that the size of the people involved is relevant to the question of whether the defendant used force. We find his reliance on those cases to be misplaced. Both *Mungia* and *Wright* involved alleged robberies. (*Mungia*, 234 Cal.App.3d at p. 1707 [substantial evidence challenge]; *Wright*, 52 Cal.App.4th at p. 209 [addressing whether assault is a lesser included offense of robbery under accusatory pleading test].) In the context of a

14

robbery, when "*actual* force" is used, as opposed to only fear, "at the very least it must be a quantum more than that which is needed merely to take the property from the person of the victim," or else the offense is a theft from the person of another rather than a robbery. (*Wright*, 52 Cal.App.4th at p. 209; see *Mungia*, 234 Cal.App.3d at pp. 1707-1708.) It is in considering whether that minimum quantum of actual force was used that the jury may take into account the physical characteristics of the defendant and victim. (*Wright*, 52 Cal.App.4th at p. 209; *Mungia*, 234 Cal.App.3d at p. 1709.) We do not read either *Mungia* or *Wright* to support the notion that a defendant's or victim's physical characteristics are relevant to the underlying question of whether the defendant used force at all.

Relatedly, Rines argues—again, without citation to relevant case authority—that it was error for the instruction to allow for any amount of "'pressure or power' even a de minimis amount," to be considered "force." In essence, Rines apparently proposes that the jury should have been instructed that there is some quantum of pressure or power applied, below which there can be no finding that "force" was used in the meaning of section 69. There are circumstances where "force" has such a specialized, technical meaning. (See, e.g., *People v. Soto* (2011) 51 Cal.4th 229, 242 [to prove lewd act on a child under 14 by use of force in violation of section 288, subd. (b)(1), force used must be "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself'"].) But this is not one of them. As suggested by the statutory language, the question for the jury is properly framed as whether the defendant charged

15

with violating section 69 used "force" *at all*—whether or not it also amounts to "violence"—and, if so, whether the defendant did so to resist an executive officer. (See § 69 [applying to one who "knowingly resists, by the use of force or violence..."]; *People v. Bernal* (2013) 222 Cal.App.4th 512, 519 (*Bernal)* ["force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction"].) It is left for the jury to decide as a question of fact whether the defendant's actions are best viewed as an intentional exertion of force (of whatever amount) to resist the executive officer, or if the defendant resisted without force (the lesser included offense of misdemeanor resisting arrest (§ 148)), or if the defendant did not resist at all.[9] There is no appropriate basis for an instruction limiting the definition of force in the manner Rines now proposes. He therefore has demonstrated no error in the definition the trial court used.

As to the trial court's second supplemental instruction, Rines contends that the jury should not have been advised that force "need not be used 'toward the person of an executive officer.'" He asserts that "the prosecutor was required to prove that the

---

[9] We note that the jury was instructed, using CALCRIM No. 2671, that it could consider the amount of force the officers and Rines used against one another in the context of deciding whether the force the officers used was reasonable and, if not, whether any force Rines used to defend himself was reasonable. That instruction specifies that Rines could "lawfully" use reasonable force to defend himself against unreasonable use of force by the officers. Nothing in that instruction, or any other, foreclosed the jury from considering the disparity between the physical power of the officers and Rines in deciding the issue of reasonableness. And the defense in fact argued, and properly so, that the relative sizes and strengths of the officers and Rines should be considered in that context.

defendant used force or violence against three particular executive officers, one for each count." This assertion, however, is mistaken. As noted, the prosecution was required to prove that Rines *resisted* each of the three executive officers, and that he used force or violence to do so. (See § 69.) The direction in which he applied force is immaterial. (*Bernal*, *supra,* 222 Cal.App.4th at p. 520 ["forceful resistance of an officer by itself gives rise to a violation of section 69, without proof force was directed toward or used on any officer"].)

To be sure, directly exerting force on the person of an executive officer constitutes resisting by force. (See, e.g., *Smith*, *supra*, 57 Cal.4th at p. 237 [defendant punched officer in the face].) Nevertheless, "a violation of section 69 need not involve any force or violence directed toward the person of an executive officer." (*Bernal*, *supra*, 222 Cal.App.4th at p. 519.) In *Bernal*, the defendant forcibly resisted by running *away* from an officer who was holding on to his waist, and by swinging his hips from side to side in an attempt to wriggle out of the officer's grasp. (*Id*. at p. 520 [such "forceful resistance" "amply supported" conviction under section 69].) In *People v. Carrasco* (2008) 163 Cal.App.4th 978, the Court of Appeal upheld the section 69 convictions of a defendant under similar circumstances. The defendant, who was on a bicycle, had been grabbed around the waist by a police officer. (*Id.* at p. 982.) He tried to ride away—exerting force *away* from the officer—but was tackled to the ground. (*Ibid.*) He then continued to resist arrest by squirming, kicking, and holding his hands beneath his body to prevent handcuffing, but without directing force *at* any of several officers attempting to restrain

17

him.  (*Ibid.*; see *Bernal*, *supra*, 222 Cal.App.4th at p. 519 [discussing *Carrasco*, noting that the defendant's conduct "did not involve any force directed at any of the arresting officers"].)  The trial court's supplemental instruction was, therefore, a correct statement of the law.

The reasoning of *Martin*, *supra*, 133 Cal.App.4th at p. 776 is particularly instructive, although it is not controlling authority on our exact issue.  In that case, the defendant had been convicted of, among other things, one count of battery with injury on a peace officer (§243, subd. (c)(2)) and one count of violating resisting an executive officer by force (§ 69).  (*Martin*, 133 Cal.App.4th at p. 779.)  At issue was whether the "multiple-victim exception" applied, so that the lesser of those offenses did not need to be stayed pursuant to section 654.  (*Id.* at p. 782.)  There was evidence that the defendant physically battered one of four officers attempting to arrest him, and that he had kicked at the legs of two others.  (*Id.* at p. 780.)  He did not, apparently, direct any force at the person of the fourth officer.  (*Ibid.*)  Nevertheless, the Court of Appeal found that the defendant had committed a crime of violence—section 69—against *four* victims: "appellant committed acts of violence against more than one victim; he resisted arrest by four different officers and battered one of them."  (*Martin*, at p. 783.)  In our case, similarly, there was evidence that Rines used force to resist arrest by at least five different officers, though he was charged with resisting only three of them.  Those convictions required evidence only that Rines used force to resist each of the officers, not that he directed force at any or all of them.

18

Because Rines has demonstrated no error in the jury's instructions, we need not address the parties' arguments regarding prejudice.

C. *Ineffective Assistance of Counsel*

Rines asserts that his trial counsel provided constitutionally ineffective assistance of counsel by stipulating to the trial court's first supplemental instruction on the issue of force, rather than objecting to it. Not so. "Defense counsel does not render ineffective assistance by declining to raise meritless objections." (*People v. Ochoa* (2011) 191 Cal.App.4th 664, 674, fn. 8.) We have found no error in the instruction. It necessarily follows that defense counsel was not ineffective by failing to object to it.

D. *Simple Assault as a Necessarily Included Lesser Offense*

The trial court did not instruct the jury on simple assault (§ 240) as a lesser included offense of section 69.[10] Rines argues that it had a sua sponte duty to do so, and that the error requires reversal of his convictions. Without quite expressly conceding that the trial court erred, the People contend only that Rines suffered no prejudice. We find that the trial court should have instructed the jury on simple assault, but that the error was harmless.

The trial court has a sua sponte duty to instruct the jury on all lesser offenses that are necessarily included in the charged offense if the evidence reasonably could support a

---

[10] It correctly instructed on section 148, subdivision (a), as a lesser included offense of section 69. (See *Smith*, *supra*, 57 Cal.4th at p. 243 [section 148, subd. (a) is a necessarily included lesser offense of section 69 where defendant was alleged to have forcibly resisted an officer].)

19

finding that the defendant committed only the lesser offense. (*Smith*, *supra*, 57 Cal.4th at pp. 240, 244.) A lesser offense is necessarily included in a greater offense "if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) Where, as here, a defendant is charged with multiple ways of violating a statute, the trial court must sua sponte instruct on a lesser offense that is necessarily included in any one of those ways. (*Smith*, *supra*, 57 Cal.4th at p. 244.)

Assault, defined in section 240 as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," is not a necessarily included lesser offense of section 69 under the statutory elements test. (See *People v. Brown* (2016) 245 Cal.App.4th 140, 152 (*Brown*) [so holding, and noting that a person "can violate section 69 . . . without necessarily attempting to apply physical force."].) It follows that the prosecution could have chosen to file an accusatory pleading alleging the defendant violated section 69 only in a manner that would not constitute an assault. (See *Smith*, *supra*, 57 Cal.4th at p. 244 ["The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense"].) Here, however, the prosecution did not do so.

The information against Rines alleged that, as to three different officers, he "did knowingly resist by the use of *force and violence* said executive officer in the performance of their duty." (Italics added.) As we discuss above, it is possible to violate

the statutory language of section 69, referring to the use of force *or* violence to resist, without attempting to use force or violence against the person of another. But a defendant who has used "force and violence" to resist an executive officer has necessarily committed assault. (*Brown*, *supra*, 245 Cal.App.4th at p. 153.) Section 240 is therefore a necessarily included lesser offense of section 69 as that offense is alleged in the accusatory pleading of this case, though differently framed allegations could have yielded a different conclusion.

Further, we will assume for present purposes that the evidence could reasonably have supported a jury finding that Rines was guilty only of violating section 240, and not section 69. This would consist of a finding that an officer was not acting within the scope of his duties, for example because of his excessive use of force, but also that Rines's use of force in response was excessive or otherwise unjustified. (See *Brown*, *supra*, 245 Cal.App.4th at p. 154; see also *People v. Castain* (1981) 122 Cal.App.3d 138, 145 ["even if the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple battery if he responds with excessive force"].) Our question, then, is whether there was any prejudice that flowed from the trial court's failure to instruct on simple assault.

In noncapital cases prejudice from the failure to instruct on a lesser included offense is analyzed under the California harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Breverman* (1998) 19 Cal.4th 142, 178.) Under that standard, reversal is required "only if, 'after an examination of the entire

cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Ibid.*) In this context, probability ""'"does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."'" (*People v. Campbell* (2015) 233 Cal.App.4th 148, 165.) In making this determination, we consider the entire record, including the relative strengths and weaknesses of the evidence supporting the greater and lesser offenses, the jury "instructions as a whole, the jury's findings, and the closing arguments" of the parties. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.)

Applying these standards, we find that the trial court's error was harmless. Rines testified, and his counsel argued, that he did not intentionally attempt to use force (excessive or otherwise) against any of the officers. Assault, as defined in section 240, requires an intentional act. (*People v. Malik* (2017) 16 Cal.App.5th 587, 598.) This aspect of the defense's case is not dispositive of our issue, since the jury may interpret the evidence as it sees fit, independent of the parties. (See *Brown*, *supra*, 245 Cal.App.4th at p. 153-154 [cautioning that jury need not make binary choice between defense's and prosecution's version of events].) Nevertheless, that the defense did not make the argument, even in the alternative, tends to support the conclusion that the result would not likely have been different if the trial court had instructed on simple assault. (See *People v. Larsen*, *supra*, 205 Cal.App.4th at p. 831.)

Additionally, the jury's various questions, discussed in detail above, strongly suggest that the jury was grappling with whether Rines's conduct amounted to the use of

force at all, not whether he might have used excessive force. Moreover, at least arguably, the jury's focus on whether *Rines* used force—and the speed with which it reached a verdict, once it resolved that issue to its satisfaction—suggests that it had concluded the *officers*' actions did not involve excessive force, or were otherwise outside their lawful duties. (See *People v. Sibrian* (2016) 3 Cal.App.5th 127, 138-139 [jury's question asking for clarification of force element of section 69 and """willfully resisted""" element of section 148 "suggests the jury had determined the officers acted lawfully and were grappling with whether *defendant's* conduct amounted to use of force"].) In such a circumstance, the jury could not reasonably have found Rines violated only section 240, but not section 69.

Having reviewed the entire record, we are not persuaded that there is a reasonable chance the jury's verdict would have been different had it been instructed on simple assault as a lesser included offense of section 69. (See *People v. Larsen*, *supra*, 205 Cal.App.4th at p. 831 ["'The question is not what a jury *could* have done, but what a jury would *likely* have done if properly instructed.'"].) Rines therefore suffered no prejudice from the trial court's instructional error.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                    
                                                        J.

We concur:

MILLER                    
            Acting P. J.

SLOUGH                    
          J.